CITY OF DETROIT, a Michigan Municipal Corporation, By and Through DETROIT WATER AND SEWERAGE DEPARTMENT, Plaintiff,

v.

STATE OF MICHIGAN, Michigan State Department of Transportation, County of Wayne, Wayne County Road Commission, Defendants.

Civ. A. No. 81–74116.

United States District Court,
E. D. Michigan, S. D.

May 17, 1982.

Opinion on Denial of Rehearing
June 4, 1982.

See 543 F.Supp. 220.

---

Darryl Alexander, Asst. Corp. Counsel, Detroit, Mich., for City of Detroit.

David Balas, Asst. Atty. Gen., Lansing, Mich., for Mich. Dept. of Transp.

James A. Hourihan, Hogan & Hartson, Washington, D. C., Lawrence A. Schendel, Wayne County Road Com'n, Detroit, Mich., for Wayne County Road Com'n.

## OPINION

FEIKENS, Chief Judge.

The Detroit Water and Sewerage Department (DWSD) brought this suit seeking an order compelling the Michigan Department of Transportation (MDOT) and the Wayne County Road Commission (Road Commission) to pay for DWSD's treatment of stormwater collected on property owned by these agencies. This would include all of the highways in metropolitan Detroit as well as Detroit Metropolitan Airport. The claim is based on *quantum meruit* and an alleged implied contract. DWSD has billed both agencies during the past few years charging the same rates it applied to the subscribing suburbs. Neither agency has paid and DWSD claims that their refusal is additionally a violation of the Michigan Revenue Bond Act, M.C.L.A. § 141.101 *et seq.*, and the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1284(b)(1)(A), plus the regulations at 40 C.F.R. § 35.929–1.

In this opinion I address the motions of both parties to dismiss the complaint for lack of jurisdiction. Both argue that the court lacks subject matter jurisdiction and the state additionally argues that it is immune from jurisdiction in this court by virtue of the Eleventh Amendment. I note at the outset that there is no diversity of citizenship; all of the parties are governmental units within the state. Therefore, if I do have subject matter jurisdiction, it is either because DWSD has alleged a federal question or because the claims are cognizable under my ancillary or pendent jurisdiction.

DWSD alleges a violation of FWPCA. It also refers in the jurisdictional sections of the complaint to this court's order of March 21, 1979 appointing the Mayor of Detroit receiver of the DWSD with the power to collect its receivables. *United States v. Detroit*, 13 E.R.C. 1624 (March 21, 1979). It also refers to the court's orders of October 4, 1979, August 26, 1980, and March 9, 1981, which bound all users of the system to the results of various challenges to the DWSD's rates. All of these orders were entered in *United States, et al. v. City of Detroit, et al.*, Civil No. 77–71100 (E.D.Mich.), a case which the Environmental Protection Agency (EPA) initiated in 1977 charging DWSD with violation of the FWPCA. DWSD is still in receivership in this court and claims are still proceeding under the court's pendent jurisdiction. Although ambiguously stated, I understand DWSD's references to my orders as an appeal to the court's ancillary or pendent jurisdiction and I will treat them in that way. For the reasons discussed below, I find that DWSD has not pleaded a federal question but that my ancillary jurisdiction does reach its claims. I find, however, that I must dismiss the claims against MDOT since the state has not waived its Eleventh Amendment immunity in this case.

### A. *Subject Matter Jurisdiction*

1. Federal Question Jurisdiction

The FWPCA, 33 U.S.C. § 1284(b)(1)(A), prohibits the Administrator of the EPA from approving any grant for treatment works "unless he shall first have determined that the applicant (A) has adopted or will adopt a system of charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share ... of any waste treatment services provided by the applicant ...." The regulations at 40 C.F.R. § 35.929–1 describe acceptable user charge systems.

The defendants argue, and I agree, that these sections adequately provide for enforcement by the Administrator and no private cause of action can be implied. The

criteria for finding an implied cause of action was succinctly explained by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

The Court said:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States so that it would be inappropriate to infer a cause of action based solely on federal law? [citations omitted].

*Id.* at 78, 95 S.Ct. at 2088.

*Cort* was decided in 1975 and since then the Court, while not abandoning the directions of *Cort,* appears to have become even more strict and its emphasis has fallen heavily on the intention of Congress, particularly as expressed in the language of the statute. In *Universities Research Assoc. v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981), for example, the Court elaborated: "But as the Court's recent opinions have made clear, the question of whether a statute creates a private right of action is ultimately 'one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.'" *Citing Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979), and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). Later in the same opinion the Court added: "The Court consistently has found that Congress intended to create a cause of action 'where the language of the statute explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case.'" *Cannon v. University of Chicago,* 441 U.S. 677,

690, n.13, 99 S.Ct. 1946, 1954, n.13, 60 L.Ed.2d 560 (1979). Conversely, it has noted that there "would be far less reason to infer a private remedy in favor of individual persons" where Congress, rather than drafting the legislation "with an unmistakable focus on the benefited class," instead has framed the statute simply as a general prohibition or a command to a federal agency. *Id.* at 690–692, 99 S.Ct. at 1954–55.

Nothing in section 1284(b)(1)(A) suggests that Congress intended that it be enforced by anyone but the Administrator of the EPA, indeed it reads simply as a prohibition to the Administrator. It does not, as DWSD claims, impose any obligations on the users of treatment systems. At best it simply describes a condition to the receipt of federal grants. Nor does DWSD point to any direct evidence of Congress' intent that might contradict the plain language. It does not refer to either the debates or the reports of either House. It argues only that an intent must be inferred from the duties Congress imposed in the section, its purpose to rehabilitate the nation's water, and the necessity of federal funding to accomplish those objectives. The argument seems to be that Congress placed on DWSD a heavy burden in requiring a user system and it would be absurd for Congress not to have provided a means of enforcing that duty. DWSD claims that unless a right of action is found and it is therefore able to enforce its user charges, it will lose its grants and be unable to meet the effluent standards imposed by the Act.

This argument is based on the premises that (i) DWSD has no other way of enforcing its user charges, and (ii) if a user refuses to pay the charges, DWSD no longer has a user charge system. The first premise is patently false: the user charge system that DWSD has developed, and which is presumably of the sort Congress contemplated, involves a series of contracts between DWSD as a provider of services and each of its users. These contracts, governed by state law, can be enforced in state courts. Similarly if the agencies are required to pay under an implied contract or *quantum me-*

*ruit,* these state law claims can also be heard in state court. There was obviously no need, therefore, for Congress to provide DWSD, at least, with an additional method of enforcement.[1]

The second premise is similarly false. When a party refuses to fulfill its duty to another, the duty does not dissolve; on the contrary, it is then that the court steps in to enforce it. DWSD's user system is built on contract, or *quantum meruit* if proper; if these defendants refuse to pay what they owe, assuming they owe anything, that does not dissolve DWSD's user system. The refusal of these agencies to pay, therefore, cannot threaten Detroit's funding. DWSD points out that if it does not charge all users their proportionate share and pursue them through litigation if necessary, its system will in fact be a sham and then it may lose funding. This may be true yet it does not save this court's federal question jurisdiction. If this court does not have ancillary jurisdiction, DWSD will have to take its claims to state court.

Because I find that Congress did not intend to create a private cause of action in FWPCA § 1284(b)(1)(A), I find that there is no federal question which would provide this court with subject matter jurisdiction.

### 2. Ancillary Jurisdiction

 Even though DWSD does not present a federal question, I find my ancillary jurisdiction is broad enough to retain these claims. It is established law that a federal court which appoints a receiver has ancillary jurisdiction over all suits brought by the receiver in furtherance of the receivership. Before the turn of the century, in *Pope v. Louisville, New Albany & Chicago Ry. Co.,* 173 U.S. 573, 19 S.Ct. 500, 43 L.Ed. 814 (1899), the Supreme Court declared, "When an action or suit is commenced by a receiver ... to accomplish the ends sought and directed by the suit in which the [receiver's] appointment was made, such action or suit is regarded as ancillary ... and jurisdiction of these subordinate actions or suits is to be attributed to the jurisdiction upon which the main suit was rested." *Id.* at 577, 19 S.Ct. at 501. *See also White v. Ewing,* 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67 (1895).

Since *Pope,* the Supreme Court has not reviewed this rule directly but many of the Circuit Courts of Appeals, citing *Pope,* have upheld jurisdiction based only on a receivership. The United States Court of Appeals for the Sixth Circuit first applied the rule in 1943 in *Roof v. Conway,* 133 F.2d 819 (6th Cir. 1943), and again in 1981 in *Haile v. Henderson,* 657 F.2d 816 (6th Cir. 1981). In *Haile* the Court declared, "We begin with the undisputed proposition that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. As

---

1. It is conceivable that Congress might have provided the users of a system with a cause of action against a municipality to insure that the municipality was billing each of its users for their proportionate share of the cost of the service. This would be the case, for instance, if Congress in requiring a user system was concerned that users be treated fairly and have to pay no more than the cost of their services. It is difficult, however, to imagine a customer threatening the grants which reduce its fees. I do not find that Congress intended even this limited private cause of action but if I did, DWSD would not be able to take advantage of it since it would be a cause of action which would run against it.

DWSD has urged a similar argument in its favor. It claims it is a beneficiary of the section since the section must be read as requiring users to pay the fees assessed against them. This is implicit in DWSD's claim that the agencies have somehow violated the section. The answer to this argument is the same; there is still no evidence that Congress intended that private parties be able to enforce the section and there is no need to imply such a right to complete the section since Congress gave the Administrator of the EPA adequate power to enforce any duties the section imposes. But beyond that, there is also no reason to believe that the section imposes a duty on users of waste treatment systems. It is clearly written and it states explicitly and only a condition to the approval of grants. From a fair reading of the section it would appear that Congress intended only to require the service agencies to institute a user charge and leave to state law, presumably the law of contracts, the method of enforcement.

such, the district court has ancillary subject matter jurisdiction of every suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction." *Id.* at 822.

I placed DWSD under receivership in 1979 under the administration of Coleman A. Young, Mayor of the City of Detroit. The order of appointment gave the mayor authority to perform any act necessary to accomplish "expeditious compliance with the consent judgment [of September 17, 1977]." Specifically, the mayor was entitled to "manage, control and deal with all items, assets, properties and articles that constitute or are related to the Wastewater Treatment Plant of the Detroit Water and Sewerage Department and shall have the authority required or necessary for the complete management and control of the plant, including but not limited to: (a) the collection of its receivables." *United States v. Detroit,* 13 E.R.C. 1625 (March 21, 1979).

The inclusion of the power to collect receivables was no mere boiler plate. An important item in the EPA's complaint was the failure of DWSD to implement a proper user charge system required by Title II of the FWPCA, 33 U.S.C. §§ 1281–1292, discussed in the preceding section. *United States v. Detroit, supra,* (Complaint, ¶ 27). The consent judgment referred to in the order of appointment required Detroit to "develop and enact a Sewer Use Ordinance, a User Charge System, an Industrial Cost Recovery System, and a Local Capital Cost Funding System to provide revenue necessary to meet the terms of this Judgment, and to provide secondary sewage treatment as required by law . . . ." DWSD was to implement all of these provisions by January 1, 1980. The mayor's power to collect receivables was intended to provide all of the authority necessary to develop and implement the user system whose provisions the DWSD seeks to enforce in this suit.

Consequently, I find that this suit was brought to accomplish the end of the receivership and that I have subject matter jurisdiction under my ancillary jurisdiction. This, of course, does not dispose of the motion. The state has argued that it is nonetheless immune to jurisdiction in this court because of its stature as sovereign. In the next section I take up its objection. My jurisdiction over the Road Commission is not subject to such a defense and I will, therefore, retain jurisdiction over the claims against it.

**B. Immunity of the State as Sovereign**

■ The Eleventh Amendment to the Constitution bars all suits in federal courts against unconsenting states brought by their own citizens as well as citizens of other states. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Even when the suit is brought against a state employee stripped of his sovereign cloak by the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a court does not have jurisdiction to award monetary relief that would have to be paid from the state treasury. Justice Rehnquist speaking for the Court in *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1973), stated: "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Citing Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944), and *Kennecot Copper Corp. v. State Tax Comm'n.,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946). *See also Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), and *In Re Ayers,* 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887) (prohibiting award of specific performance of contract). Thus even if DWSD had named an officer of the state instead of the state itself, I could not grant retrospective relief or order the state to specifically perform an implied contract.

DWSD tries to overcome the Eleventh Amendment immunity by arguing that the state has waived its immunity to these claims by participating in the principal action to which this claim is ancillary. I find no merit in this contention. The state's

immunity is a constitutional right and its waiver, therefore, is not to be lightly implied. As the Supreme Court said in *Edelman v. Jordan, supra*, 415 U.S. at 673, 4 S.Ct. at 1360–61:

> Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here. In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.

The Court grounded this dicta on its earlier holding in *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (1944):

> When we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration, a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.

While in *Edelman* the Court considered whether the state's participation in a federal program amounted to waiver, the principle is equally applicable to the state's participation in a suit brought by the United States to enforce federal laws. *Missouri v. Fiske*, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933). The state's only role in *United States v. Detroit, supra*, has been to facilitate the negotiation of Detroit's compliance with federal standards. None of the parties sought any relief against the state or a declaration of the rights or duties of the state. The state joined this suit because of its crucial role in administering federal grants under the FWPCA. This is too thin a connection from which to infer the waiver of a constitutional right.

Nor does the state's participation in the grant program provide the explicit waiver necessary. The state through its Department of Natural Resources entered a delegation agreement in 1977 and again in 1979, the latter subsequently amended. The agreements describe the state's duties and neither suggests even obliquely that the state was to waive its immunity to suits by its citizens. Furthermore, DWSD does not refer to any sections of the FWPCA in which Congress made waiver of immunity a condition of participation and I have found no such condition. DWSD's argument for waiver has no support. Without waiver, as I have already indicated, the Eleventh Amendment denies this court personal jurisdiction over the State of Michigan and its agencies.

In conclusion, therefore, I deny all of DWSD's claims against the Michigan Department of Transportation. I will, however, retain the claims against the Wayne County Road Commission under my ancillary jurisdiction and they will be consolidated with the principal action of *United States v. Detroit*, Civil No. 77–71100.