**The UNITED STATES of America, Plaintiff and Counter-Defendant,**

v.

**The WAYNE COUNTY DEPARTMENT OF HEALTH–AIR POLLUTION CONTROL DIVISION, Plaintiff,**

v.

**The STATE OF MICHIGAN, Defendant, Counter-Plaintiff and Cross-Plaintiff,**

v.

**The CITY OF DETROIT, a municipal corporation, and the Detroit Water and Sewerage Department, Defendant and Cross-Defendants,**

v.

**ALL COMMUNITIES AND AGENCIES UNDER CONTRACT WITH the CITY OF DETROIT FOR SEWAGE TREATMENT SERVICES, et al.**

Civ. A. Nos. 77–71100, 80–71613.

United States District Court,
E.D. Michigan, S.D.

July 18, 1983.

Mark Werder, Asst. U.S. Atty., Detroit, Mich., for United States of America.

Michael Moran and Frances L. O'Brien, Ann Arbor, Mich., for Darralyn Bowers and Vista Disposal, Inc.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

On April 27, 1983, Darralyn C. Bowers ("Bowers") and Vista Disposal, Inc. ("Vista"), filed a motion to vacate, terminate or alter the receivership under which Vista was and is operating. In support of that motion, movants contended, *inter alia,* that I should be disqualified from hearing or acting on the matters at issue. After a hearing was held, I denied that motion and an order issued from the Bench on June 3, 1983.

This memorandum opinion sets forth my reasons for denying that motion. Before addressing the specific issue of disqualification, a brief summary of the procedural and factual history of the case is in order.

In May of 1977 a lawsuit was brought in this court by the United States Environmental Protection Agency against the City of Detroit and others alleging violations under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* In September of 1977 the parties entered into a Consent Judgment by which any noncompliance with applicable law was to be cured. However, remedying such noncompliance proved to be a difficult task, and by order and opinion of this court, dated March 21, 1979, the operations of the Detroit Water and Sewerage Department ("DWSD") were placed into receivership and Mayor Coleman Young was appointed administrator of that receivership.

In October of 1980, DWSD entered into contract no. PC–483 ("PC–483") with Vista (owned by Bowers) for the hauling of sludge. On February 3, 1983 a federal indictment was handed down alleging that Bowers and five others had violated federal law by, *inter alia,* conducting an enterprise through a pattern of activity which included bribery of a public official in the award, execution, performance and interpretation of PC–483. *United States v. Charles Beckham, et al.,* 562 F.Supp. 488 (1983). On February 7, 1983 I entered an Order To Show Cause directing DWSD to appear and show cause why PC–483 should not be suspended pending resolution of the criminal actions related to it. On February 23, 1983 Vista moved, pursuant to 28 U.S.C. § 455, to disqualify me from hearing that Order To Show Cause, alleging that I was biased or otherwise not impartial. Subsequent to hearings, that motion was denied and an order was issued from the Bench.

On March 14, 1983 Vista entered into a Stipulated Order by which it was agreed that PC–483 would continue in full force and effect, that Bowers would relinquish any managerial role with regard to the operation of Vista, and that Vista would be placed into a receivership in order to preserve the status quo. In accordance with that agreement, Bowers resigned as President/Director of Vista, and Vista was placed into a receivership with Judge Theodore Bohn as receiver.

On April 27, 1983, Bowers and Vista, having retained new counsel, filed the motion which is the subject of this opinion, seeking the termination or alteration of Vista's receivership and, again, asking me to disqualify myself.

■ At the onset it should be made clear that this entire matter has been previously decided; and that Bowers and Vista consented to the precise arrangement they now challenge. In order to circumvent this matter of consent, movants argue that the court was without jurisdiction over Vista, and that such jurisdictional defects cannot be waived or consented to.

Such claims of a lack of jurisdiction are without foundation in that jurisdiction over Bowers or Vista is not, and has never been, asserted. The Order To Show Cause of

February 7, 1983 was directed to DWSD, not Bowers or Vista, and their direct involvement in this matter was brought about on their own motion to intervene. During negotiations which preceded the entering of the Stipulated Order of March 14, 1983, it was made clear to all parties that I would not then decide whether my ancillary jurisdiction under the receivership of DWSD extended so far as to encompass those who chose to contract with that entity.[1]

■ However, it was and is undisputed that, as the receiver court and acting in my supervisory capacity, I did and continue to have jurisdiction and authority to order my administrator to terminate PC–483 as burdensome and detrimental to the purposes of the receivership. It is hornbook law that the court which imposes a receivership retains jurisdiction and has supervisory control over those who administer it. *See generally* 75 C.J.S., *Receivers* § 145; 1 R. Clark, Law of Receivers § 296 *et seq.* (3rd ed. 1959). However, given that my exercise of this power to order the administrator to suspend the operation of the contract would have the unfortunate effect of causing the unemployment of virtually all of Vista's employees, this court and the affected parties entered into a voluntary agreement by which the status quo, along with the integrity of the receivership, could be preserved without the necessity of costing innocent workers their jobs.

Thus, since this court's jurisdiction was not asserted over Vista or Bowers, they cannot here be heard to complain that the receivership was improperly imposed upon them. The receivership over Vista is voluntary, not court ordered, and if Vista chooses to violate the terms of that Stipulated Order, I will have no alternative but to order the suspension of the suspect contract.

As to the matter of judicial disqualification, again, that issue was decided under prior motion of Vista; however, since that ruling, along with the more current ruling on the same matter, was issued from the Bench, I will utilize this opportunity to more fully set forth the reasons for those decisions.

■ Vista has requested judicial disqualification under 28 U.S.C. § 455(a) and (b), which provides, in pertinent part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

.  .  .  .  .

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

In the more recent motion, Vista claimed that disqualification is required under subparagraphs (b)(4) and (5), claiming that, because of my long and continued involvement in this case and my capacity as judge of the receiver court, I have developed a personal interest in the case which prevents me from being impartial. In the earlier motion, Vista claimed that certain information and knowledge which I obtained in my

---

1. *See City of Detroit v. Michigan,* 538 F.Supp. 1169 (E.D.Mich.1982).

supervisory capacity as receiver judge prevented me from being impartial. There is a common thread to these allegations—all of the alleged bias stems, in one way or another, from my direct involvement in the adjudication of this case. In other words, all of the knowledge, predilections and bias that are alleged are judicial in nature, and do not arise from any personal or extrajudicial source. It is for that reason that the motions were denied.

■ It has long been held that bias of the sort which justifies disqualification of a judge must be extrajudicial, rather than judicial in nature. *Berger v. U.S.,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). This principle was reaffirmed as applying to statutory disqualification in *U.S. v. Grinnell Co.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), where the Supreme Court stated, "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* at 583, 86 S.Ct. at 1710. *See generally* 13 Wright, Miller & Cooper, Federal Practice and Procedure, §§ 3541–3553 (1975). *See also* Note, Disqualification of Federal Judges for Bias or Prejudice, 46 University of Chicago L.Rev. 236 (1978). The logic behind this requirement is apparent: judges simply cannot be disqualified for reasons of knowledge they received or opinions they formed during the adjudication of a legal matter; otherwise a judge could never reach the end of a case without being disqualified through exposure to it in its earlier stages. *Id.*

The United States Court of Appeals for the Sixth Circuit has consistently held that only extrajudicially-acquired bias will suffice as a basis for disqualification. *Knapp v. Kinsey,* 232 F.2d 458 (6th Cir.1956); *Oliver v. Michigan State Board of Education,* 508 F.2d 178 (6th Cir.1974); *U.S. v. Franks,* 511 F.2d 25 (6th Cir.1975). Moreover, this Circuit recently held that the requirement that bias must arise from an extrajudicial context continues to be applicable under 28 U.S.C. § 455(a) as amended in 1974. *Bradley v. Milliken,* 620 F.2d 1143 (6th Cir.1980).

In the case at hand, all of the incidents which are alleged to have caused bias arose directly out of my involvement in the case itself. There is a paucity of cases in which disqualification is alleged based upon information gained by a court while acting in its supervisory capacity as receiver court. The only case I have seen which directly addressed this issue is *U.S. v. Coven,* 662 F.2d 162 (2d Cir.1981). In that case Judge Motley acquired certain knowledge concerning possible criminal activities from a receiver whom she had appointed. The defendant in that case claimed that Judge Motley had obtained personal knowledge of disputed evidentiary facts from her receiver, and that she should have been disqualified from hearing a later-related civil attachment proceeding. In holding that she was not required to recuse herself, the Court of Appeals for the Second Circuit first noted that bias must come from an extrajudicial source, and then stated:

> In this case, the information in question was obtained by Judge Motley when the government sought her approval of an agreement by a receiver she had appointed to cooperate in a criminal investigation. *It was clearly within her judicial responsibilities to be informed of proposed activities that might impair the receiver's ability to perform his duties properly.* (Emphasis added).

*Id.* at 168.

In the motions for disqualification which have been filed in this case, it has nowhere been alleged that I have acquired bias or prejudice through any mechanism other than my involvement in the case itself. Thus, by definition, any such bias or prejudice is judicially acquired, as opposed to extrajudicial or personal, and will not suffice as grounds for disqualification. While the prospect of foisting all future matters which arise under this case upon my colleagues may, at times, be appealing, it would be improper for me to do so. It is incumbent upon the court which imposes a receivership to supervise its operation. It is that court which is familiar with the back-

ground of the case and the purpose of the receivership, and it is that court upon which ultimate responsibility for the operation of the receivership rests. It is for that reason that I am neither willing nor able to disqualify myself in this case from hearing any such matter which arises under the scope of this receivership.