**CITY OF DETROIT, a Michigan Municipal Corporation, By and Through DETROIT WATER AND SEWERAGE DEPARTMENT, Plaintiffs,**

**v.**

**STATE of Michigan, Michigan State Department of Transportation, County of Wayne and Wayne County Road Commission, Defendants.**

Civ. A. No. 81–74116.

United States District Court,
E.D. Michigan, S.D.

Sept. 28, 1984.

Lynn Ferris, Asst. Corp. Counsel, City of Detroit, Detroit, Mich., for plaintiffs.

James A. Hourihan, John R. Gerstein, John S. Stanton, Washington, D.C., for Wayne Co. Road Com'n.

---

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

The Detroit Water and Sewerage Department (DWSD) and the City of Detroit bring this action to compel the Wayne County Road Commission (WCRC) to pay the reasonable value of DWSD's collection, transportation and treatment of stormwater that runs off WCRC roads located within the City of Detroit. Plaintiffs argue that they are entitled to payment for these services based on the following theories: the binding effect of two settlement agreements approved by this court, an implied contract, quantum meruit, the requirements of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§ 1251–1376 (1982), and the provisions of Michigan's Revenue Bond Act, Mich.Comp.Laws §§ 141.101–141.139 (1970).

In an earlier opinion in this case, *City of Detroit v. State of Michigan,* 538 F.Supp. 1169 (E.D.Mich.1982), I held that there was no federal subject matter jurisdiction, reasoning that the FWPCA did not create a private cause of action on behalf of Plaintiffs. However, because the remaining claims were brought in furtherance of the receivership created by this court in *United States v. City of Detroit,* No. 77–71100 (E.D.Mich.), I held that I had ancillary jurisdiction over these claims.

Both sides now argue that this case can be decided in their favor by summary judgment. After careful consideration of their competing motions, including a review of the papers, depositions, and interrogatories filed by the parties, I conclude that even if the record is viewed in the light most favorable to Plaintiffs, Plaintiffs clearly have not raised a genuine issue with respect to any material fact. *See County of Oakland v. City of Berkley,* 742 F.2d 289 at 297 (6th Cir.1984); *Arrasmith v. Pennsylvania Railroad Co.,* 410 F.2d 1311, 1313 (6th Cir.1969). Accordingly, WCRC's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied.

## I.  BACKGROUND

The undisputed facts relevant to disposition of these motions are as follows. In 1940, Detroit began to operate a wastewater treatment plant, which treated water flowing through a combined sewer system. A combined sewer system funnels stormwater runoff and sewage through a common system.

According to Plaintiffs, when the system began operation in 1940, no charges were assessed to any user of the Detroit sewage system for stormwater flows. More specifically, although WCRC had assumed jurisdiction over some roads in Detroit since 1912, WCRC was not charged for stormwater that ran off roads within its jurisdiction. Deposition of William B. Carney, at 17 ("Carney Deposition"). Indeed, WCRC was not charged for such runoff at any time prior to January 1, 1980. *Id.* at 17, 19, 92. Similarly, the City of Detroit "has never paid Detroit Water and Sewerage Department (DWSD) for the treatment of stormwater runoff from City streets." Plaintiffs' Subsequent Answer to Defendant WCRC's Interrogatories, at 2. *See also* Carney Deposition, at 92.

In 1977, the Environmental Protection Agency (EPA) sued the City of Detroit, DWSD, and the State of Michigan, alleging that Detroit's sewage system did not satisfy the requirements of the FWPCA. Following negotiations between the parties, a consent judgment was entered by this court, requiring the City to adopt a user charge system and have it fully implemented and effective on all bills after January 1, 1980.

A rate plan was adopted by the Detroit City Council on September 19, 1979, and was later approved by the EPA. On October 4, 1979, this court took jurisdiction over all challenges to this plan and ordered that "all users, customers and rate payers of the system" would be bound by the results of any challenges unless they notified the court of their desire to opt out. Order Re Rate Challenges, *United States v. City of Detroit,* No. 77–71100 (E.D.Mich. Oct. 4, 1979). Prior to a hearing on these chal-

lenges, the parties reached a settlement agreement, which was filed with this court on June 30, 1980. On August 26, 1980, this court ordered that "all users, customers and rate payers of DWSD's sewage system shall be bound by the Settlement Agreement." Order of Dismissal Re Rate Challenges, *United States v. City of Detroit*, No. 77–71100 (E.D.Mich. Aug. 26, 1980).

On March 9, 1981, this court assumed ancillary jurisdiction over challenges to treatment rates that were to become effective on July 1, 1981, again ordering that "users, customers and rate payers of the system" would be bound by the proceedings unless they opted out. Order Re Rate Challenges, *United States v. City of Detroit*, No. 77–71100 (E.D.Mich. March 9, 1981). After challenges were filed, the parties reached an amicable settlement agreement. Users, customers, and rate payers of the system were afforded an opportunity to object to this agreement, and an order was later issued providing that the terms of the agreement were "binding upon the DWSD and all customers, users, and rate payers." Order of Dismissal Re Rate Challenges, *United States v. City of Detroit*, No. 77–71100 (E.D.Mich. July 21, 1982).

At issue in this case is DWSD's right to charge WCRC for a portion of the costs associated with stormwater that runs off WCRC roads in the City of Detroit and flows into the treatment system. To compute this charge for the 1980–81 and subsequent rates DWSD first estimated the system's total cost that was attributable to stormwater runoff within the City of Detroit. Carney Deposition, at 51–52, 67, 69. This cost was then allocated between three classes: residential water users, nonresidential users, and state and county roads, based on their relative impervious acreage. Plaintiffs' Answers to Interrogatories From WCRC, at 2.

Hence, in contrast to the practice of the preceding forty years, as of 1980, WCRC was billed for the estimated cost of treating stormwater that ran off roads under WCRC's jurisdiction. At the same time, Plaintiffs continued their practice of not charging the City of Detroit for treatment of water running off streets within the City of Detroit's jurisdiction (i.e., "city streets"). Carney Deposition, at 62. The costs of treating this water from city streets were allocated among the three classes that were paying for runoff in the City of Detroit. *Id.* at 68. Consequently, in addition to being charged for the estimated costs of water running off roads within WCRC's jurisdiction, WCRC was charged a proportionate share of the cost of treating stormwater running off the city streets. *Id.*

WCRC has refused to pay any stormwater runoff charge, alleging that stormwater that runs off its roads is not attributable to WCRC and that WCRC should not be considered a user of Detroit's treatment facility. Additionally, focusing on the forty year practice that preceded this charge, WCRC argues that the charge is contrary to an implied contract between Plaintiffs and WCRC and is precluded by the doctrines of equitable estoppel, waiver and laches. Finally, WCRC posits that the charge is arbitrary and capricious, and violates the proportionality requirement of section 1284(b)(1)(A) of the FWPCA. 33 U.S.C. § 1284(b)(1)(A) (1982).

## II. DISCUSSION

As I have noted, Plaintiffs have advanced a number of theories on which WCRC might be found liable for runoff charges. Having previously rejected Plaintiffs' cause of action under the FWPCA, I now consider the Plaintiffs' remaining counts in turn.

### A. *Quasi Contract*

■ The gravamen of Plaintiffs' contractual claim is that a contract should be implied in law based on the Plaintiffs' provision of services to WCRC.[1] A contract

---

1. Although Plaintiffs' complaint alleges both an implied contract and quantum meruit as grounds for recovery, it is clear from the papers that both counts rest on a single theory: a

contract in law should be implied. *See, e.g.,* City of Detroit's Summary Judgment Brief, at 13–20. As explained by the City, "[t]he Plaintiff's claim that there is understood and implied

implied in law is constructive and does not require a meeting of the minds; it is "imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended." *Cascaden v. Magryta,* 247 Mich. 267, 270, 225 N.W. 511, 512 (1929); *see also Moll v. Wayne County,* 332 Mich. 274, 278, 50 N.W.2d 881, 883 (1952), *overruled on other grounds, Brown v. State Department of Military Affairs,* 386 Mich. 194, 191 N.W.2d 347 (1971). The process of imposing such contracts "to prevent unjust enrichment is an activity which courts should approach with some caution." *Hollowell v. Career Decisions, Inc.,* 100 Mich. App. 561, 570, 298 N.W.2d 915, 920 (1980); *see also Cascaden,* 247 Mich. at 270, 225 N.W. at 512. "The essential elements of such a claim are (1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is inequitable that the defendant retain." *Hollowell,* 100 Mich.App. at 570, 298 N.W.2d at 920; *see also Moll,* 332 Mich.App. at 278–79, 50 N.W.2d at 883.

■ After reviewing the parties' arguments and those material facts that are not in dispute, I have concluded that this clearly is not a case in which a benefit has been received by WCRC, or in which it would be inequitable for WCRC not to compensate Plaintiffs. These conclusions are compelled by a number of considerations.

Initially, I cannot agree with Plaintiffs that WCRC receives a benefit from the treatment of stormwater simply because some of that water runs off WCRC's roads before entering the sewer system. As Plaintiffs concede, WCRC does not create this volume of flow and cannot be held directly responsible for it. Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment, at 10, 11. "Stormwater, unlike sewage or other industrial waste, is obviously a result of weather

conditions and the amount of rainfall treated and therefore is not a waste created by any particular user or recipient of services." *Id.* at 10. While the City might choose to apportion this cost of running a combined sewer system on users who *otherwise* benefit from the treatment facility, it cannot reasonably claim that equitable considerations justify the imposition of quasi contractual obligations on a party such as WCRC.

This view is in accord with that expressed by the United States Court of Appeals for the Ninth Circuit. In *Hotel Employers Ass'n v. Gorsuch,* 669 F.2d 1305, 1309 (9th Cir.1982), the court observed that "surface run-off cannot be fairly ascribed to individual land-owners' 'use' of the treatment system. Nature's whims and not landowners' actions determine where and how much rainfall descends upon the City."

The inequity of requiring WCRC to pay for treatment of water that runs off its roads within the City is compounded by the fact that WCRC provides a service to the City and its residents by maintaining such roads. It would hardly be equitable to penalize WCRC for providing this service by holding that in doing so WCRC had assumed responsibility for the cost of treating some portion of the stormwater entering Detroit's treatment system.

The conclusion that WCRC should not be responsible for these costs is further dictated by DWSD's handling of stormwater running off city streets. It is not disputed that the City has never been responsible for any costs associated with this runoff; instead this cost is assumed by other rate payers. I can discern no rationale for imputing responsibility for such costs on WCRC when the City bears no corresponding responsibility.

---

between the City of Detroit and WCRC a contract ... is not based upon the specific knowledge of any known individual who can state that parties have agreed orally or in writing to such claims of the Plaintiff, but is based upon the equitable principle that a contract may be implied in law, as quasi or constructive, and does not require any meeting of the minds but

is imposed by fiction of law to enable justice to be accomplished, even in the case that no contract was intended. *See City of Detroit v. City of Highland Park,* 326 Mich. 78 [39 N.W.2d 325] (1949)." Plaintiff, City of Detroit's Continuing Answers to Defendant, WCRC's Interrogatories, at 3.

Finally, my view of the equities is influenced by Plaintiffs' longstanding treatment of WCRC before the recent imposition of charges. For the preceding forty years, Plaintiffs apparently accepted the view that equity did not require WCRC to bear the costs of stormwater running off WCRC roads, for Plaintiffs acknowledge that WCRC was never charged for such costs during this period.

Considered on the whole, the equities in this case overwhelmingly support WCRC's position. Even viewing the facts most favorably for Plaintiffs, I must conclude that: (1) Plaintiffs have not conferred a benefit upon WCRC; and (2) even if Plaintiffs' services were for WCRC's benefit, equity does not require WCRC to provide compensation. Plaintiffs have alleged no facts which might justify a contrary conclusion. Hence, there is no genuine issue of fact as to whether a contract in law should be implied.

### B. *The Revenue Bond Act*

Plaintiffs also allege a cause of action based on section 18 of Michigan's Revenue Bond Act. Mich.Comp.Laws § 141.118 (1970). Section 18 requires that "free services shall not be furnished by a public improvement" to a public corporation, public agency, or public instrumentality. It also mandates that "[t]he reasonable cost and value of any service rendered to a public corporation ... by a public improvement ... shall be paid for as the service accrues...."

The suggestion that this statute creates some obligation—either statutory or quasi contractual—on the part of WCRC can be quickly dismissed for reasons already discussed. As stormwater that runs off the roads is not fairly attributable to WCRC, Plaintiffs are not furnishing or rendering a service *to WCRC.* Consequently, the statute creates no obligation on the part of WCRC to pay for this service.[2]

### C. *The Settlement Agreements*

Finally, I must consider whether the terms of the settlement agreements support Plaintiffs' claim for relief. In Plaintiffs' view, these agreements obligate WCRC to pay the rates specified in the agreements; they argue that WCRC's failure to raise timely challenges to the agreements precludes it from doing so now.

This claim is meritless. The settlement agreements are only binding on "users, customers, and rate payers." In light of my holding that WCRC did not have an obligation to pay for stormwater treatment, and WCRC's denial of such an obligation and refusal to make payments, it cannot reasonably be argued that WCRC was a "customer" or "rate payer" within the meaning of the settlement agreements. Indeed, Plaintiffs do not argue the contrary.

Instead, Plaintiffs argue that the agreements are applicable to "users" of the sewage system, and suggest that WCRC is such a "user." This characterization of WCRC can be rejected for reasons expounded earlier. WCRC cannot be considered a user of the system simply because stormwater runs off WCRC roads before entering the system. No allegation is made that WCRC uses the system in some other manner. Consequently, I conclude that by its terms the settlement agreements are not binding on WCRC and do not obligate WCRC to pay the rates specified in the agreements.[3]

---

2. It is also noteworthy that Plaintiffs' attempt to apply the statute to the situation at hand is patently inconsistent with their acknowledged actions in this case. For if the statute is applicable to such a situation, it would mean that Plaintiffs have been violating this statute for the past forty years by providing free service "to WCRC," and probably that they are still violating this statute by failing to charge the City for water running off city streets. For Plaintiffs to invoke the statute on these facts is disturbing at the very least.

3. The parties have argued at some length over the meaning of the words "user" and "recipient" as employed in the FWPCA. As this is no longer a suit to enforce the FWPCA—but is instead an action requiring interpretation of settlement agreements as well as principles of equity—this focus on the history and mechanics of the FWPCA is somewhat misplaced. Moreover, even if the Act did have a controlling effect on

There is an independent reason why the 1981–82 agreement should not bind WCRC. Paragraph 12 of the agreement preserves some pending challenges to the 1981–82 rates, including "[t]he claim of any party that [WCRC] ... failed and should be required to pay the costs of treatment of stormwater runoff from Wayne County Roads...." Obviously such a provision does not entitle a party to bring an action alleging that WCRC should pay for stormwater runoff and at the same time deny WCRC the right to argue that it should not make such payment. Rather, in an action to compel payment, this provision preserves the issue of whether WCRC should be required to pay—just as Plaintiffs can bring an action claiming that WCRC has such an obligation, paragraph 12 permits WCRC to rebut this claim.[4]

For the foregoing reasons, I reject Plaintiffs' suggestion that WCRC is obligated to pay compensation by the terms of the settlement agreements.

## III. CONCLUSION

The undisputed facts in this case clearly indicate that Plaintiffs cannot recover on any of the claims raised in their complaint. Because there is no genuine issue with respect to a material fact, WCRC's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied.

An appropriate order may be submitted.

the issues of whether WCRC is a "user" within the meaning of the settlement agreements and whether it is receiving services for quasi contractual purposes, I do not think the Act supports the broad interpretation advocated by Plaintiffs. The regulations implementing the FWPCA unambiguously state that infiltration/inflow—which includes, *inter alia,* stormwater—is "not directly attributable to users." 40 C.F.R. § 35.929–2(d) (1983).

4. It should also be noted that there is a serious question as to whether WCRC had sufficient notice of the 1980–81 agreement to satisfy the requirements of due process. No facts have been alleged, or appear in the record, which cast doubt on WCRC's claim that the only notice sent to WCRC related to districts that "were not within the jurisdiction of WCRC, but instead were under the jurisdiction of the Wayne County Board of Public Works. As a result, these notices were transferred from WCRC to the Department of Public Works, a separate legal entity from WCRC." Defendant WCRC's Brief & Response to City of Detroit's Motion for Summary Judgment, at 12. However, given the parties' limited briefing of this question and the independent bases for my decision, I need not, and do not, decide the notice issue.