STATE OF MICHIGAN, The Administrator of the United States Environmental Protection Agency, Greenfield Construction Company, Inc., Lanzo Construction Company, Inc., Giannetti Construction of Michigan, Inc., and Rocco Ferrera & Company, Inc., Plaintiffs,

v.

The CITY OF ALLEN PARK, The Le Blanc Tile Drainage District, The Drainage District for Ecorse Creek Pollution Abatement Drain No. 1, The County of Wayne, and Charles N. Youngblood, The Wayne County Drain Commissioner, Defendants.

STATE OF MICHIGAN and Robert Lindisch, Plaintiffs,

v.

The CITY OF ALLEN PARK, MICHIGAN, a Michigan Municipal Corporation, Defendant.

Civ. A. Nos. 79–74681, 79–74682.

United States District Court, E.D. Michigan, S.D.

June 8, 1990.

Stephen F. Schuesler, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for State of Mich.

Karl R. Overman, Asst. U.S. Atty., Detroit, Mich., for U.S.E.P.A.

Abba I. Friedman, Laurence A. Berg, Hyman, Gurwin, Nachman, Friedman & Winkelman, Southfield, Mich., for Const. Companies.

Michael H. Feiler, Farmington Hills, Mich., for City of Allen Park.

Jeffrey A. Supowit, Detroit, Mich., for Wayne County Drain Com'r.

Harry S. Ellman, Southfield, Mich., for Allen Park Homeowners of Le Blanc Drain Dist., Inc.

Charles R. Moon, Detroit, Mich., Bond Counsel.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Defendants City of Allen Park ("Allen Park") and Ecorse Creek Pollution Abatement Drain No. 1 ("Ecorse Abatement Drainage District") bring this motion to compel the Michigan Department of Natural Resources ("MDNR") and the United States Environmental Protection Agency ("EPA") to fund its share of a Sewer System Evaluation Survey ("SSES"). Defendants argue that the motion to compel funding is premised on my power to enforce the final judgment and order in this case. Final Order and Judgment, June 30, 1980. *See State of Michigan v. City of Allen Park*, 501 F.Supp. 1007 (E.D.Mich. 1980). MDNR and EPA oppose the motion, claiming that no federal court has jurisdiction to compel funding, that my orders did not address funding of the SSES, and that

defendants have failed to exhaust administrative remedies. Additionally, EPA argues that the Clean Water Act § 201(*l*)(1) precludes the award of federal funds for SSES work.

Additionally, EPA moves to terminate my compliance orders of June 30, 1980, February 15, 1983, and October 3, 1983, and to dismiss the actions, alleging that the SSES was not contemplated in the orders, and thus defendants have complied fully by performing all obligations that the orders require.

I held a hearing on these matters on February 6, 1990. For the reasons set forth below, I now GRANT defendants' motion and DENY EPA's motion.

## I. BACKGROUND

Although two prior opinions describe the history of this case, I will highlight briefly the relevant chronology.[1] In May, 1969, the Michigan Water Resources Commission studied the water quality in Ecorse Creek and found that the discharge of combined sewer overflows into the creek was the principal cause of its poor water quality. In wet weather, rain and snow melt overtaxed the sewer system and caused overflows which dumped untreated sewage into the creek basin.

In November of 1970, MDNR ordered the communities in the Ecorse Creek basin to correct the pollution problem. To further that goal, Wayne County Drain Commissioner, Charles Youngblood, authorized a study of the sewer system, *Facility Planning Study: Pollution Abatement of Ecorse Creek, Element 2—Combined Sewer Areas, Final Plan* (Wayne County Drain Commissioner, February 1977).

The study recommended construction of a new sewer system to separate domestic sanitary sewage from storm runoff. The proposed remedy was formally selected for implementation by the North Branch of Ecorse Creek Drain Improvement Board on January 27, 1977, following a public hearing. The plan received wide public support, including the support of Allen Park.

On June 14, 1977, Allen Park Council passed a resolution approving the financing of drain improvements. The Wayne County Drain Commissioner approved the petition submitted by the cities of Allen Park, Dearborn Heights, Lincoln Park and Taylor; County of Wayne; and State of Michigan on October 19, 1977, finding that the project was necessary for public health and should be constructed.

EPA and MDNR tendered grants under the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251, for the construction of the new sewer system. Under the arrangement, EPA provided seventy-five per cent of the funding and MDNR provided five percent of the funding. The remaining twenty percent was allocated among the four municipalities that had originally petitioned for the pollution abatement project.

In 1978, the Ecorse Abatement Drainage District approved a proposed apportionment of costs. Allen Park, however, balked at the completion schedule for the project because of the significant outlays it was required to make. On December 12, 1979, a suit was filed against Allen Park seeking to require the city to proceed with the project according to schedule. On June 30, 1980, after a prolonged trial, I ordered Allen Park to proceed with funding and construction of the project. *See State of Michigan v. City of Allen Park*, 501 F.Supp. 1007 (E.D.Mich.1980). I retained jurisdiction to implement the order. Final Order and Judgment, June 30, 1980, at 2–3.

In 1981, Allen Park challenged the apportionment, but I held that it was proper. *City of Allen Park v. Ecorse Pollution Abatement Drain No. 2 Drainage District*, 518 F.Supp. 1079 (E.D.Mich.1981), aff'd, 708 F.2d 722 (6th Cir.1982), *cert. denied*, 462 U.S. 1111, 103 S.Ct. 2464, 77 L.Ed.2d 1340 (1983). Allen Park continued to delay. As a result, on February 15, 1983, I entered a detailed schedule of compliance. Allen Park argued, based on the report of an engineering firm they had

---

**1.** *See State of Michigan v. City of Allen Park*, 573 F.Supp. 1481 (E.D.Mich.1983); *State of Michigan v. City of Allen Park*, 501 F.Supp. 1007 (E.D.Mich.1980).

hired, that methods other than the separation project were more cost effective. EPA studied the proposed alternatives and suggested at a conference held on May 10, 1983, that although two alternatives might be preferable, it could not guarantee funding for them and would not agree to abandon the separation project.

Allen Park formally requested modification of the June 30, 1980 order to allow implementation of alternative methods. I denied the motion, in part, because "every additional moment of delay is an additional moment where a known health hazard is permitted to continue to impact upon the health and enjoyment of life of those who live in and around the Ecorse Creek Drainage Basin." *State of Michigan v. City of Allen Park*, 573 F.Supp. 1481, 1486 (E.D. Mich.1983). I further reasoned:

> A known health hazard has been permitted to exist for over 13 years while various administrative and judicial proceedings interminably ground along their way. Now we have at hand a solution to the problem which all parties agree will help alleviate the problem. *We have state and federal funding for the project.* We have all of the communities involved, with the exception of Allen Park, well on their way or completed with implementing their portions of the project.

*Id.* at 1486 (emphasis added).[2]

On October 3, 1983, I ordered, *inter alia,* that any party named in, or in any way connected with, this lawsuit was enjoined from instituting any litigation or administrative proceedings

> A. which will have the effect of preventing or delaying any of the parties or their officers, agents, attorneys or employees from fully carrying out and complying with this court's June 30, 1980 Final Order and Judgment and this

court's February 15, 1983 compliance schedule as both presently exist; and

> B. which seeks to or has the effect of withdrawing grants or grant contracts for the project which is the subject matter of this litigation, or which seeks to rearrange grant priorities....

Injunction, Mandamus and Order, October 3, 1983, at 3–4.

Since my order, Allen Park has substantially completed its separation project. All that remains is the SSES. Unfortunately, now that Allen Park has complied with my orders, MDNR and EPA are balking at providing the necessary funding.

Defendants argue in their motion to compel funding that the Element 2 Facility Plan expressly provided for the SSES as described in my judgment and orders of June 30, 1980 and November 6, 1980, and subsequent Scheduling Order of February 15, 1983, and Order of Injunction and Mandamus of October 3, 1983. Defendants also argue that throughout the 1980 trial MDNR and EPA represented to this court that the project would be grant funded and that a grant was already in place. Failure by MDNR and EPA to provide funding violates my orders, defendants assert, and should be remedied under the All Writs Act, 28 U.S.C. § 1651.

The State replies that the motion must be denied for the following reasons: 1) my decisions in this case did not address the facilities planning grant (step 1), which encompasses the SSES, but rather the design grant (step 2), and construction grant (step 3); 2) defendants are barred by laches, *res judicata,* and failure to exhaust administrative remedies; and 3) I am without authority to grant the requested relief under *United States v. City of Detroit,* 720 F.2d 443, 451 (6th Cir.1983). In addition to the

---

**2.** The history of this case illustrates the pervasive difficulties of addressing regional environmental problems in the context of a political organization of municipalities. Environmental hazards, in this case poor water quality, do not begin and end neatly at municipal boundaries. Three other communities "spent millions of dollars and committed valuable municipal resources to carrying out their duties under the

court order, but they have not been able to reap the benefits of these expenditures because of Allen Park's delay." *State of Michigan v. City of Allen Park,* 573 F.Supp. 1481, 1487 (E.D.Mich. 1983) (citation omitted). In fact, other communities' pollution problems may have actually worsened because of Allen Park's delay. *Id.* at 1487 n. 7.

arguments made by the State, EPA contends that Section 201(*l*)(1) of the Clean Water Act precludes the award of federal funds for SSES work.

## II. ANALYSIS

■ The issue presented is whether funding of the SSES is compelled by my prior orders and opinions in this case. I retained jurisdiction to implement my orders. Final Order and Judgment, June 30, 1980, at 2–3.

Throughout the extended history of this case, MDNR and EPA urged me to order Allen Park to complete a sewer separation project. On June 30, 1980, at the close of trial, I issued a Final Order and Judgment, ordering completion of the sewer separation project. Specifically, I ordered Allen Park to proceed with the funding and construction of the Element 2 Facilities Plan, Alternative 1 ("Plan"). The Plan had been introduced and relied on throughout trial as a description of the work that both sides agreed needed to be completed. Included in the Plan that was ordered at the close of trial was the Allen Park SSES.

Until recently, MDNR and EPA represented to me and to the defendants that the project for which they sought implementation would be grant funded. Throughout the extensive proceedings, all parties understood that grant funding was a necessary and agreed-upon aspect of this case and was required for the success of the sewer separation project. This court, Allen Park, and Ecorse Abatement Drainage District all relied on MDNR and EPA's representations. For example, in a 1983 opinion in this case, I wrote with regard to the Plan that, "We have state and federal funding for the project." *State of Michigan v. City of Allen Park*, 573 F.Supp. 1481, 1486 (E.D.Mich.1983). Because of this reliance, MDNR and EPA cannot now successfully argue that funding of any aspect of the project was not contemplated or agreed to by them.

Furthermore, in my order of October 3, 1983, I enjoined any party in this litigation from delaying compliance with my June 30, 1980 order. In addition, I enjoined any

party from instituting any litigation or administrative proceedings that sought to or had the effect of withdrawing grants or grant contracts. Injunction, Mandamus and Order, October 3, 1983, at 3–4. Plaintiffs' actions in denying funding for the SSES violate that injunction by delaying compliance with my order and seeking to withdraw grant funding. Plaintiffs cannot succeed in this attempt because their actions stand in stark contradiction to the primary intentions of the final order and judgment in this case.

■ I have at my disposal a broad range of equitable powers to enforce my orders and judgments. *U.S. v. City of Detroit*, 476 F.Supp. 512, 520 (E.D.Mich.1979). This power encompasses situations, such as the instant case, in which my previous orders have been thwarted. *Gregris v. Edberg*, 645 F.Supp. 1153, 1157 (W.D.Pa.1986), *aff'd Appeal of Allegheny Co.*, 826 F.2d 1054 (3d Cir.1987), *aff'd Gregris v. Edberg*, 826 F.2d 1055 (3d Cir.1987). My prior orders and judgments in this case encompassed the grant funding by MDNR and EPA of the Allen Park SSES. Plaintiffs have a continuing obligation to comply with those orders.

■ Some confusion may exist because the Plan expressly provided that the Allen Park SSES work should be completed subsequent to the separation project. Because of the inflow present in the combined sewer system, the results of the SSES would be significantly more meaningful if completed after the sewer system separation. In light of this decision, the Allen Park SSES was not performed in conjunction with the sewer separation project. With the exception of monies for the Allen Park SSES, MDNR and EPA provided promised funding for work I ordered. They cannot refuse to fund this SSES work now because it was delayed purposefully until completion of the sewer separation project.

■ EPA also argues that a 1981 amendment to the Clean Water Act ("CWA") precludes the award of federal funds for SSES work. 33 U.S.C. § 1281(*l*)(1). Putting aside the question of whether the

CWA amendment actually prohibits the funding of an SSES as EPA claims, EPA's argument fails because the 1981 amendment was not given retroactive effect. My order of June 30, 1980, issued prior to the amendment, encompassed the Allen Park SSES. CWA amendments of 1981 are of no consequence to the resolution of this case.

 Finally, plaintiffs' motion to terminate my compliance orders is denied because, as this decision illustrates, the totality of the project ordered initially on June 30, 1980 has not been completed. As I stated in that order, I retain jurisdiction of this case until the parties comply with my orders.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to compel funding is GRANTED and plaintiffs' motion to terminate my compliance orders is DENIED.

IT IS SO ORDERED.