STATE OF MICHIGAN, The Administrator of the United States Environmental Protection Agency, Greenfield Construction Company, Inc., Lanzo Construction Company, Inc., Giannetti Construction of Michigan, Inc., and Rocco Ferrera & Company, Inc., Plaintiffs,

v.

The CITY OF ALLEN PARK, the Le Blanc Tile Drainage District, the Drainage District for Ecorse Creek Pollution Abatement Drain No. 1, the County of Wayne, and Charles N. Youngblood, the Wayne County Drain Commissioner, Defendants.

STATE OF MICHIGAN and Robert Lindisch, Plaintiffs,

v.

The CITY OF ALLEN PARK, MICHIGAN, A Michigan Municipal Corporation, Defendant.

Civ. A. Nos. 79–74681, 79–74682.

United States District Court,
E.D. Michigan, S.D.

Dec. 9, 1993.

Stephen F. Schuesler, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for State of Mich.

Karl R. Overman, Asst. U.S. Atty., Detroit, Mich., for U.S.E.P.A.

Abba I. Friedman, Laurence A. Berg, Hyman, Gurwin, Nachman, Friedman & Winkelman, Southfield, Mich., for Const. Companies.

Michael H. Feiler, Farmington Hills, Mich., for City of Allen Park.

Jeffrey A. Supowit, Detroit, Mich., for Wayne County Drain Com'r.

Harry S. Ellman, Southfield, Mich., for Allen Park Homeowners of Le Blanc Drain Dist., Inc.

Charles R. Moon, Detroit, Mich., Bond Counsel.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Defendants City of Allen Park and Ecorse Creek Pollution Abatement Drain No. 1 Drainage District ("Drainage District") (collectively, "the movants") move to enforce previous court judgments to compel funding of certain sewage facilities within the City of Allen Park and to prevent the deobligation of certain grant funds. In particular, the movants contend that money remains from existing grant funds and that this remaining money should be used to fund the work identified in a Sewage System Evaluation Survey ("SSES"). I find that the rehabilitation work identified in the SSES is part of the original project that the funding agencies agreed to help fund. I accordingly grant defendants' motion.

### Background

This motion arises out of an on-going effort of four Michigan cities to reconstruct their local wastewater treatment and disposal system to prevent further pollution of Ecorse Creek. On June 8, 1990, I ordered the State of Michigan Department of Natural Resources ("MDNR") and the United States

Environmental Protection Agency ("EPA") (collectively, "the agencies") to provide that available and previously allocated funding be released to fund a Sewage System Evaluation Survey. *State of Michigan v. City of Allen Park,* 739 F.Supp. 1102, 1107 (E.D.Mich.1990). The U.S. Court of Appeals for the Sixth Circuit affirmed that decision in *State of Michigan v. City of Allen Park,* 954 F.2d 1201 (6th Cir.1992). The SSES now has been performed and apparently identifies work needed to properly complete the project. The movants contend that money still remains in the original grant funds and that this remaining money should be used to fund the work identified in the SSES. They reason that "all the parties knew or should have known that the SSES would identify additional work that would need to be done on the facilities within the City of Allen Park to complete the project...." Defendants' Motion at 5.

The agencies frame the issue differently. They argue that the movants actually are requesting funds for a project significantly different in scope from the one that the agencies originally agreed to help finance. They accordingly argue that the additional work identified in the SSES is best interpreted as a request to amend the scope of the project. Given this interpretation, MDNR and EPA argue that I have no jurisdiction to hear this motion. Instead, they argue, movants first must take a different course of action before appearing before me in federal court—such as exhausting administrative remedies or filing a complaint. They further contend that the funds remaining from the original grant should be turned over to the Michigan State Revolving Fund.

*Analysis*

My June 8, 1990 Order turned on whether the SSES is properly construed as a new, separate project—which would have required that Allen Park make a separate grant request—or whether the SSES was part of the entire Ecorse Creek pollution control effort. *Allen Park,* 739 F.Supp. at 1105–06; *see also Allen Park,* 954 F.2d at 1213–14. I decided at that time that the "project" originally contemplated by the parties includes the SSES.

The same question is presented here. If it is true, as EPA and MDNR contend, that the project ends with the SSES, then the City of Allen Park and the Drainage District indeed would be requesting additional funding and would have to exhaust administrative procedures and file a complaint before I have jurisdiction to hear this motion. But if the project, in fact, includes rehabilitation work to be identified by the SSES, the movants simply would be requesting funds that they are properly owed under the grant and under my previous rulings. *See Allen Park,* 739 F.Supp. at 1106; *see also Allen Park,* 954 F.2d at 1217 (noting that "the district court has jurisdiction to decide a wide range of issues raised by the parties and that the rule requiring exhaustion of administrative remedies has no application"). In short, to resolve this motion I must decide whether the rehabilitation work identified in the SSES is something originally contemplated (or at least something that should have been originally contemplated) when the agencies agreed to grant funding. Assistant Regional Counsel for the U.S. Environmental Protection Agency Sebastian Patti put the matter more succinctly. This motion turns on the meaning of two words: "the project."

I find that the term "project" includes the work identified by the SSES, and I hereby order the agencies to release the remaining grant funds. Language from the court of appeals' *Allen Park* decision best illustrates the meaning that the term "project" has taken on in this case:

Here, the court used "project" to refer to the entire "Ecorse Creek Project" just as MDNR had in its letter denying Allen Park's application for SSES grant funding. Although "project" has a technical meaning in the Act and regulations, we believe it is clear that throughout this litigation all parties and the court have referred to the entire undertaking by which the four cities sought to stop pollution of Ecorse Creek from their sanitary sewers and surface runoff as a single "project."

*Allen Park,* 954 F.2d at 1215.

The SSES serves a function. The SSES presumably was performed to evaluate the effectiveness of the remedial work already

begun. It is reasonable to assume that the SSES would identify additional activity required to complete the project of cleaning up and prevention of further pollution of Ecorse Creek. In fact, as the court of appeals also observed, the Step 2 Grant Conditions specifically acknowledged that "'the grantee agrees (1) to complete the sewer system evaluation survey [the SSES] *and any resulting rehabilitation....*'" *Allen Park,* 954 F.2d at 1205 (emphasis added). I agree with the movants' argument that, "all the parties knew or should have known that the SSES would identify additional work that would need to be done on the facilities within the City of Allen Park to complete the project...." Defendants' Motion at 5.

The agencies counter that the movants' unspecific claim constitutes a request for an "open ended right" to fund new facilities. They complain that the movants nowhere specified what sort of new work is required by the SSES. They conclude that they never could have agreed to a project so vague in scope.

I disagree with this conclusion. The term "project" as used in this case admittedly has taken on a meaning different from the technical one preferred by the agencies. *Allen Park,* 954 F.2d at 1215. It nevertheless is well-defined. I conclude, and the court of appeals has affirmed this view, that "EPA and MDNR had guaranteed 80% grant funding for the entire sewer separation program involved in the four cities' required actions to relieve pollution in Ecorse Creek. This was the 'project.'" *Allen Park,* 954 F.2d at 1213.

I also disagree with the argument that this interpretation of the term "project" subjects the agencies to open-ended demands for additional funding. First, funding is limited by the definition of the term "project"; Allen Park can only demand funding for the "required actions to relieve pollution in Ecorse Creek." *Id.* In addition, further funding is limited to the amount that the agencies already have allocated to the project. This court was informed at oral argument that only an estimated $1 million remains from the original grant, while the SSES calls for an estimated $6 million to complete the project. The movants only ask for the estimat-ed $1 million left in the fund. They presumably will have to find the rest of the required funding elsewhere.

For the foregoing reasons, IT IS ORDERED that defendants' motion to enforce previous judgments to compel funding and to prevent the deobligation of grant funds is GRANTED.