100 F.3d 451
 Brian AHEARN, Virginia Grow, Emily Kay Murphy, Thomas N. Murphy, Ann Reed, Eleanor Whitson, and Frank Whitson, Plaintiffs-Appellants,
v.
CHARTER TOWNSHIP OF BLOOMFIELD, a Michigan Municipal Corporation, Defendant-Appellee.
 No. 95-1380
 United States Court of Appeals,
Sixth Circuit
 Argued April 30, 1996
Decided November 12, 1996
 
 On Appeal from the United States District Court for the Eastern District of Michigan Mark S. Demorest, Hainer & Demorest, Troy, MI, (argued and briefed), for Brian Ahearn, Virginia Grow, Emily Kay Murphy, Thomas N. Murphy, Ann Reed, Eleanor Whitson, and Frank Whitson.
 John M. Donohue, (argued), William P. Hampton, Robert H. Fredericks, (briefed), Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for Charter Township fo Bloomfield.
 Before: NELSON and BATCHELDER, Circuit Judges; McKEAGUE, District Judge.*
 BATCHELDER, Circuit Judge.
 
 
 1
 The plaintiffs filed this action in the Circuit Court of Oakland County, Michigan, on behalf of themselves and others similarly situated. The defendant removed it to the United States District Court for the Eastern District of Michigan, which denied the plaintiffs' motion to remand and granted summary judgment for the defendant. The plaintiffs appeal.[1]
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 The plaintiffs reside in defendant Charter Township of Bloomfield, in Oakland County, Michigan. In their complaint, they state that they all own land in the "Bloomfield Village Combined Sewer Overflow Area," the only part of Bloomfield Township where the Bloomfield Township Board of Trustees voted to levy a special assessment under Chapter 20 of the Drain Code of 1956, Mich. Comp. Laws Section(s) 280.461 et seq. (1979 & Supp. 1996), to pay for a new sewage-retention treatment basin.
 
 
 3
 The current sewer system lets storm drainage and sewer drainage flow together[2] from Bloomfield Township to the Evergreen-Farmington Sewage Disposal System, which the Oakland County Drain Commissioner operates. The drainage ultimately flows to a wastewater-treatment plant in Detroit. The volume of sewage which may flow from Bloomfield Township to the Evergreen-Farmington system is limited by the capacity of that system and the capacity of the Detroit treatment plant. According to the complaint, when the system reaches capacity, which sometimes occurs during heavy rain, the overflow of combined storm drainage and sewage diverts untreated into the Rouge River and may contribute to the pollution of the river basin.
 
 
 4
 The complaint avers that in October 1992, the Michigan Water Resources Commission issued an "Authorization to Discharge Under the National Pollutant Discharge Elimination System" to the Oakland County Drain Commissioner, the city of Birmingham, Michigan, the city of Bloomfield Hills, Michigan, and Bloomfield Township. This "NPDES Permit" authorizes the permittees to discharge combined storm/sewer drainage from the Bloomfield Village Combined Sewer Overflow Area only if a basin is constructed to retain and treat the drainage before it discharges into the Rouge River.
 
 
 5
 Birmingham, Bloomfield Hills, and Bloomfield Township have asked the Oakland County Drain Commissioner to build such a basin. The three municipalities have agreed to pay for the basin, with the Oakland County Road Commission and higher levels of government also paying some of the cost. While Birmingham and Bloomfield Hills have agreed to pay their shares from general municipal money, the Bloomfield Township Board has levied a special assessment only against property owners in the Bloomfield Village Combined Sewer Overflow Area, in which the plaintiffs live.
 
 
 6
 The plaintiffs filed this action within 45 days of the Board's action, see id. Section(s) 280.489a(4)(a) (Supp. 1996), asserting that the assessment is illegal and unenforceable under Michigan law, because the project will not cause the value of assessed properties to rise, and because it provides no special benefit to the assessed properties different from the benefit which will accrue to any other residents of Bloomfield Township or of southeastern Michigan. They seek a declaratory judgment that the use of special assessments to pay for this project is illegal.
 
 
 7
 The defendant removed the action, and the district court summarily denied the plaintiffs' timely motion to remand. After a hearing on the parties' cross motions for summary judgment, the district court granted summary judgment for the Township and held that the special assessment was valid under Michigan law.
 
 II. DISCUSSION
 A. Standard of Review
 
 8
 We look to the complaint at the time of removal, Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 349 (1939) (citations omitted), review the denial of a motion to remand de novo, The Queen ex rel. Ontario v. City of Detroit, 874 F.2d 332, 338 (6th Cir. 1989) (citations omitted), and determine whether the action was properly removed in the first place. Fakouri v. Pizza Hut of Am., Inc., 824 F.2d 470, 472 (6th Cir. 1987) (citation omitted). Removing defendants bear the burden of establishing federal subject-matter jurisdiction. See, e.g., Carson v. Dunham, 121 U.S. 421, 425-26, 7 S.Ct. 1030, 1032 (1887). Due regard for state governments' rightful independence requires federal courts scrupulously to confine their own jurisdiction to precise statutory limits. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109, 61 S.Ct. 868, 872 (1941) (quoting Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703 78 L.Ed. 1248 (1934)).
 
 B. The Statutes
 The applicable removal statute states:
 
 9
 Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.
 
 
 10
 28 U.S.C. Section(s) 1441(a) (1994) (emphasis added).
 
 
 11
 The issue that confronts us here is whether the district court had "original jurisdiction" over this matter. No one asserts -- indeed no one could plausibly assert -- that original diversity jurisdiction exists. See 28 U.S.C. Section(s) 1332(a) (1993). Nor does the complaint present any federal question. See id. Section(s) 1331 (1993). However, Bloomfield Township asserts the district court had supplemental jurisdiction. The supplemental-jurisdiction statute, which became law in 1990, Pub.L. 101-650, Title III, Section(s) 310(a), 104 Stat. 5113 (1990), and codified pendent and much of ancillary jurisdiction, Peacock v. Thomas, 516 U.S. ____, ____ n.5, 116 S.Ct. 862, 867 n.5 (1996); Swint v. Chambers County Comm'n, 514 U.S. ____, ____ n.6, 115 S.Ct. 1203, 1211 n.6 (1995), states:
 
 
 12
 (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
 
 
 13
 (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.
 
 
 14
 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
 
 
 15
 (1) the claim raises a novel or complex issue of State law,
 
 
 16
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 
 
 17
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 
 
 18
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. Section(s) 1367 (a, b, c) (1993) (emphasis added).
 
 C. The Propriety of Removal
 
 19
 Bloomfield Township contends the basis for supplemental jurisdiction in this action is United States v. Michigan, No. 77-71100 (E.D. Mich.). According to Bloomfield Township, the state and federal claims in both this action and Michigan form part of the same case or controversy because they "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966). The "common nucleus of operative fact," the Township says, is the continuing pollution of the Rouge River.
 
 
 20
 The United States filed Michigan in 1977 at the request of the federal Environmental Protection Agency, alleging that the defendants -- the city of Detroit, the Detroit Water and Sewerage Department, and the state of Michigan -- violated the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. Section(s) 1251 et seq. (1986 & Supp. 1996), by discharging effluents and pollutants from wastewater and sewage facilities into navigable waters. County of Oakland v. City of Berkley, 742 F.2d 289, 290-91 (6th Cir. 1984); United States v. City of Detroit, 720 F.2d 443, 445 (6th Cir. 1983); see also City of Detroit ex rel. Detroit Water & Sewerage Dep't v. Michigan, 803 F.2d 1411, 1412-13 (6th Cir. 1986).[3]
 
 
 21
 In claiming that this action is part of the same case or controversy as Michigan, Bloomfield Township relies on a 1989 order issued in Michigan, in which the district court held that it had jurisdiction over 1989 Combined Sewer Overflow permits. The Township asserts that under 28 U.S.C. Section(s) 1367, the district court "shall have supplemental jurisdiction" over all claims related to the 1989 order, including the claims in this action. The Township claims that because the special assessment which the plaintiffs challenge was an action which the Township took to comply with the NPDES Permit, the Township was not undertaking state-law business in imposing the assessment. Rather, it was complying with prior federal district court orders to take all necessary steps to comply with the NPDES permit. The Township says it "could not risk being delayed" by the plaintiffs' challenge if it was to commence construction by the date required by the permit, so it removed this action to the district court, "clearly the best and most appropriate forum" for this action. In addition, construction grants and loans had to comply with federal laws and regulations, and the Township was "particularly concerned" that any delay in the state court might prevent it from getting grants and loans from higher levels of government.
 
 
 22
 To support its position, the Township relies on Oakland, which plaintiff Oakland County filed in federal district court, and which the court immediately consolidated with Michigan. 742 F.2d at 293. At issue in Oakland was a formula which Oakland County had developed to calculate the quantity of storm runoff. Under the new formula, the monthly storm-water-disposal service charges for the city of Madison Heights rose, id. at 292, and the city refused to pay. Id. at 293. Although the district court had no original jurisdiction, id. at 295, it found that it had pendent jurisdiction, id. at 294, and that the Oakland claims were substantially related to those in Michigan. Id. at 295. The court then granted summary judgment for Oakland County. Id. at 294. On appeal, Madison Heights questioned the district court's subject-matter jurisdiction. Id. at 295. We found that Oakland and Michigan "derive from a common nucleus of operative fact" -- the Detroit water-pollution problem -- and concluded there was jurisdiction in the federal district court. Id. at 296.
 
 2
 
 23
 One crucial difference between this action and Oakland is that the Oakland plaintiff filed its complaint in federal court. The action before us was filed in state court. The removal statute allows removal only of a "civil action brought in a State court of which the district courts of the United States have original jurisdiction ... ." 28 U.S.C. Section(s) 1441(a) (emphasis added). The supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction, In re Estate of Tabas, 879 F.Supp. 464, 467 (E.D. Pa. 1995), and a removal petition therefore may not base subject-matter jurisdiction on the supplemental-jurisdiction statute, Sebring Homes Corp. v. T. R. Arnold & Assocs., 927 F.Supp. 1098, 1101 (N.D. Ind. 1995); Zewe v. Law Firm of Adams & Reese, 852 F.Supp. 516, 520 (E.D. La. 1993) ("a district court does not have supplemental jurisdiction under 28 U.S.C. Section(s) 1367 to entertain the merits of claims in a state court proceeding which was removed without original jurisdiction"); Holt v. Lockheed Support Sys., Inc., 835 F.Supp. 325, 329 (W.D. La. 1993); In re Dow Corning Corp., 187 B.R. 934, 938 (E.D. Mich. 1995) ("Claims ... before a state court must not be removed ... if the only basis for removal is ... Section(s) 1367(a)."); cf. Avitts v. Amoco Prod. Co., 53 F.3d 690, 693 (5th Cir. 1995) (Section(s) 1367(c)(3) did not apply where the district court never had original jurisdiction); Parker v. Crete Carrier Corp., 914 F.Supp. 156, 159 (E.D. Ky. 1996) ("Supplemental jurisdiction cannot destroy the requirement for complete diversity ... ." (citations omitted)), even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction, Sebring Homes, 927 F.Supp. at 1101-02 (citations omitted); Estate of Tabas, 879 F.Supp. at 467 (citation omitted), and even if removal would be efficient. Estate of Tabas, 879 F.Supp. at 467.
 
 
 24
 Absent complete pre-emption, the plaintiffs in a nondiversity action are masters of their complaint and may avoid federal subject-matter jurisdiction by relying exclusively on state law. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-94, 398-99, 107 S.Ct. 2425, 2429-30, 2433 (1987). Complete pre-emption is not at issue in this action. At the time of removal, the plaintiffs' complaint asserted no claim giving the district court diversity or federal-question jurisdiction, see 28 U.S.C. Section(s) 1331, 1332(a), so the plaintiffs have properly avoided federal subject-matter jurisdiction. Cf. Zuniga v. Blue Cross & Blue Shield, 52 F.3d 1395, 1399 (6th Cir. 1995) (removal was proper because federal question conferred original jurisdiction and allowed supplemental jurisdiction); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277 (6th Cir. 1991) (same), cert. dismissed, 505 U.S. 1233, 113 S.Ct. 2 (1992).
 
 
 25
 The district court therefore erred in denying the plaintiffs' motion to remand. Without proper removal, a state-court action does not belong in federal court in the first place, and it is wrong even to consider supplemental jurisdiction. See Louisiana v. Sprint Communications Co., 892 F.Supp. 145, 150 n.5 (M.D. La. 1995) ("It ought to be obvious that because federal subject matter jurisdiction is completely lacking there is nothing upon which to exercise supplemental jurisdiction under 28 U.S.C. Section(s) 1367."); ANR Pipeline Co. v. Conoco, Inc., 646 F.Supp. 439, 441 (W.D. Mich. 1986) ("If there is no original jurisdiction, the discussion of pendent jurisdiction, of course, becomes moot."). Neither the facts nor the claims in the action before us "are so related to claims in the action" over which the federal district court already has "original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. Section(s) 1367(a). But even if they were so related, that would not transform them into claims over which the federal district court has original jurisdiction.
 
 III. CONCLUSION
 
 26
 We REVERSE the district court's denial of the plaintiffs' motion to remand, VACATE the grant of summary judgment for the defendant, and REMAND this action to the district court with instructions to GRANT the plaintiffs' motion to remand to the Circuit Court of Oakland County, Michigan. We express no opinion on the merits of this action. This is the state court's business, not ours.
 
 
 
 *
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 We carried two motions by the plaintiffs to oral argument. We hereby DENY the motion to strike certain portions of the defendant's appellate brief and award costs and attorneys' fees, and GRANT the motion to supplement the record on appeal
 
 
 [2]
 The complaint states that current law and engineering practices require new sewers to have separate lines for storm and sewer drainage
 
 
 [3]
 See generally Pure Waters, Inc. v. Michigan Dep't of Natural Resources, 883 F.Supp. 199 (E.D. Mich. 1995), aff'd, 82 F.3d 418 (table), No. 95-1498, 1996 WL 180178 (6th Cir. April 15, 1996), cert. denied, ____ U.S. ____, 117 S.Ct. 171, 136 L.Ed.2d 113 (1996); Mountain Gold Properties, Inc. v. City of Lathrup Village, 874 F.Supp. 769 (E.D. Mich. 1995); United States v. Wayne County, Mich., No. 87-70992, 1994 WL 739020 (E.D. Mich. Dec. 22, 1994); Pure Waters, Inc. v. Michigan Dep't of Natural Resources, 873 F.Supp. 41 (E.D. Mich. 1994); Michigan v. City of Allen Park, 842 F.Supp. 276 (E.D. Mich. 1993); United States v. Michigan, 781 F.Supp. 1230 (E.D. Mich. 1991); United States v. Michigan, 781 F.Supp. 492 (E.D. Mich. 1991); United States v. Michigan, 777 F.Supp. 1365 (E.D. Mich. 1991); Association of Significantly Impacted Neighbors v. City of Livonia, 765 F.Supp. 389 (E.D. Mich. 1991); Michigan v. City of Allen Park, 739 F.Supp. 1102 (E.D. Mich. 1990), aff'd, 954 F.2d 1201 (6th Cir. 1992); United States v. Michigan, No. 77-71100, 1989 WL 155689 (E.D. Mich. Nov. 7, 1989); United States v. Wayne County Dep't of Health-Air Pollution Control Div., 598 F.Supp. 1076 (E.D. Mich. 1984); City of Detroit ex rel. Detroit Water & Sewerage Dep't v. Michigan, 594 F.Supp. 574 (E.D. Mich. 1984), rev'd, 803 F.2d 1411 (6th Cir. 1986); Michigan v. City of Allen Park, 573 F.Supp. 1481 (E.D. Mich. 1983); United States v. Wayne County Dep't of Health-Air Pollution Control Div., 571 F.Supp. 90 (E.D. Mich. 1983); City of Detroit ex rel. Detroit Water & Sewerage Dep't v. Michigan, 538 F.Supp. 1169 (E.D. Mich. 1982); United States v. Michigan, 518 F.Supp. 966 (E.D. Mich. 1981); Michigan v. City of Allen Park, 501 F.Supp. 1007 (E.D. Mich. 1980); United States v. City of Detroit, 476 F.Supp. 512 (E.D. Mich. 1979)