# POPE *v.* LOUISVILLE, NEW ALBANY & CHICAGO RAILWAY COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 808. Submitted January 30, 1899. — Decided April 3, 1899.

When the jurisdiction of a Circuit Court of the United States depends on diverse citizenship, its decree is made final by the act of March 3, 1891, c. 517, 26 Stat. 826.

When an action or suit is commenced by a receiver, appointed by a Circuit Court, to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary, so far as the jurisdiction of the Circuit Court, as a court of the United States, is concerned; and where the jurisdiction of the main suit is predicated on diversity of citizenship, and the decree therein in the Circuit Court of Appeals therefore becomes final, the judgment and decrees in the ancillary litigation are also final.

The suits in which this receiver was appointed were in the nature of creditors' bills, and the only ground of Federal jurisdiction set up in them was diversity of citizenship; and as, if the decrees therein had been passed upon by the Circuit Court of Appeals, its decision would have been final, the same finality attaches to the decree of the Circuit Court of Appeals in this suit.

BALL and Pettit filed their bill in the Circuit Court of the United States for the Northern District of Illinois alleging that Ball was a citizen of Indiana and that Pettit was a citizen of Wisconsin, and that defendants were citizens of Indiana and Illinois, which suit was discontinued as to Ball, leaving Pettit, a citizen of Wisconsin, the sole complainant. Pope was appointed, in substitution for one Fish, receiver of the

Chicago and South Atlantic Railroad Company of Illinois, the order containing, among other things, the following:

"And it is further ordered that the defendant, the said Chicago and South Atlantic Railroad Company, or whoever may have possession thereof, do assign, transfer and deliver over to such receiver under the direction of Henry W. Bishop, a master in chancery of this court, all the property, real and personal, wheresoever found in this district, and all contracts for the purchase of land, and all other equitable interests, things in action, and other effects which belonged to, or were held in trust for, said defendant railroad company, or in which it had any beneficial interest, including the stock books of said railroad company, in the same condition they were at the time of exhibiting the said bill of complaint in this cause, except as far as necessarily changed in the proper management of said road, or in which it now has any such interest, and that said defendant, Chicago and South Atlantic Railroad Company, deliver over, in like manner all books, vouchers, bills, notes, contracts and other evidences relating thereto, and also the stock books of said railroad company.

"And it is further ordered that the said receiver have full power and authority to inquire after, receive and take possession of all such property, debts, equitable interests, things in action, and other effects, and for that purpose to examine said defendant, its officers and such other persons as he may deem necessary on oath before said master from time to time."

Afterwards a further order was entered, *nunc pro tunc*, as follows:

"And now comes the receiver, Charles E. Pope, of said Chicago and South Atlantic Railroad Company, and on his application it is ordered and directed that said receiver have full power and authority to bring and prosecute any and all necessary suits for the collection of any claims, choses in action and enforcement of any and every kind and nature, and to defend all suits and actions touching the rights or interests of the property or effects of any kind in his possession or under his control as receiver. This order to be entered now as of the date of his appointment and qualification as receiver."

Soon after, Pettit filed his bill in the Circuit Court of the United States for the district of Indiana, averring that he was a citizen of the State of Wisconsin, against "the said Chicago and South Atlantic Railroad Company, a corporation organized under the laws of the State of Indiana and State of Illinois, by the consolidation of an Illinois corporation of the same name of defendant herein, and an Indiana corporation known as 'the Chicago and South Atlantic Railroad Company of Indiana.'" Pope was appointed receiver on that bill, the order being similar in its terms to that entered in the Circuit Court for the Northern District of Illinois. After such appointment, and on July 12, 1881, Pope, as receiver, filed his bill of complaint in the Circuit Court for the District of Indiana, seeking to recover certain property and property rights held and claimed by certain of the defendants, which appellant claimed belonged to the Chicago and South Atlantic Railroad Company and to the ownership of or right to which he had succeeded as such receiver.

The amended bill on which the cause was heard stated that "Your orator, Charles E. Pope, who is receiver of the Chicago and South Atlantic Railroad Company, and who is a citizen of the State of Illinois, brings this his amended bill of complaint — leave therefor having been granted by this honorable court — against" certain companies and individuals, severally citizens of the States of Indiana, Ohio, New York and Kentucky; that he was appointed receiver of the Atlantic Company by the Circuit Court of the United States for the Northern District of Illinois, and also receiver by the Circuit Court of Indiana; and that he was authorized by the express orders of both courts, appointing him receiver, "to bring all suits necessary and proper to be brought to recover possession of said estate and effects and to enforce all claims," etc.

The cause went to hearing, and a money decree was rendered by the Circuit Court in favor of Pope, receiver, against appellee, which appellee was adjudged by that decree to pay. An appeal having been prosecuted to the Circuit Court of Appeals for the Seventh Circuit, a motion was made to dismiss the appeal for want of jurisdiction, and the motion over-

ruled. On final hearing the decree of the Circuit Court was reversed by the Circuit Court of Appeals, with instructions to dismiss the amended bill. The opinion of the Circuit Court of Appeals was filed June 12, 1897. 53 U. S. App. 332. Thereafter a petition for a rehearing was filed and denied. Subsequently Pope, receiver, applied to this court for a writ of certiorari, which application was denied March 7, 1898. 169 U. S. 737. On March 23 Pope moved the Circuit Court of Appeals for leave to file a second petition for rehearing, and the motion was overruled. Pope then applied to the Circuit Court of Appeals for an appeal to this court, which was granted, and the appeal having been docketed, this motion to dismiss was made and duly submitted.

*Mr. Henry W. Blodgett, Mr. G. W. Kretzinger* and *Mr. E. C. Field* for the motion.

*Mr. John S. Miller* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

If the decree of the Circuit Court of Appeals was made final by the act of March 3, 1891, c. 517, 26 Stat. 826, this appeal must be dismissed; and it was so made final if the jurisdiction of the Circuit Court depended entirely on diverse citizenship.

The Circuit Courts of the United States have original jurisdiction of suits of a civil nature, at law or in equity, by reason of the citizenship of the parties, in cases between citizens of different States, or between citizens of a State and aliens; and, by reason of the cause of action, " in cases arising under the Constitution or laws of the United States, or treaties made or which shall be made under their authority," as for instance suits arising under the patent or copyright laws of the United States. *Press Publishing Company* v. *Monroe*, 164 U. S. 105.

Diversity of citizenship confers jurisdiction, irrespective of the cause of action. But if the cause of action arises under

the Constitution, or laws, or treaties, of the United States, then the jurisdiction of the Circuit Court may be maintained irrespective of citizenship.

The Circuit Court undoubtedly had jurisdiction of this suit on the ground of diversity of citizenship, not only because that fact existed in respect of complainant and defendants, but because the suit was ancillary to those in which the receiver was appointed. When an action or suit is commenced by a receiver, appointed by a Circuit Court, to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary so far as the jurisdiction of the Circuit Court as a court of the United States is concerned; and we have repeatedly held that jurisdiction of these subordinate actions or suits is to be attributed to the jurisdiction on which the main suit rested; and hence that where jurisdiction of the main suit is predicated on diversity of citizenship, and the decree therein is, therefore, made final in the Circuit Court of Appeals, the judgments and decrees in the ancillary litigation are also final. *Rouse* v. *Letcher,* 156 U. S. 47; *Gregory* v. *Van Ee,* 160 U. S. 643; *Carey* v. *Houston & Texas Railway Co.,* 161 U. S. 115. It is true that *Rouse* v. *Letcher* and *Gregory* v. *Van Ee* were proceedings on intervention, but *Carey* v. *Houston & Texas Railway Co.* arose on an original bill in the nature of a bill of review. In that case we took occasion to quote from the opinion of Mr. Justice Miller in *Minnesota Company* v. *St. Paul Company,* 2 Wall. 609, in which the distinction is pointed out between supplemental and ancillary, and independent and original, proceedings, in the sense of the rules of equity pleading, and such proceedings "in the sense which this court has sanctioned with reference to the line which divides the jurisdiction of the Federal courts from that of the state courts." *Krippendorf* v. *Hyde,* 110 U. S. 276; *Pacific Railroad* v. *Missouri Pacific Railway,* 111 U. S. 505, and other cases were cited; the bill held to be ancillary to the suit the decree in which was attacked; and the rule laid down in *Rouse* v. *Letcher* and *Gregory* v. *Van Ee* applied.

The suits in which this receiver was appointed were in the

nature of creditors' bills alleging an indebtedness due from
the Atlantic Company; the insolvency of that company; that
certain corporations had in their possession assets of the
Atlantic Company; and praying for the appointment of a
receiver; the marshalling of assets; the winding up of the
Atlantic Company, and the application of its assets to the
payment of its debts. The only ground of Federal jurisdic-
tion set up in the bills was diversity of citizenship, and if the
decrees therein had been passed on by the Circuit Court of
Appeals, the decision of that court would have been final
under the statute. And as this suit was in effect merely in
collection of alleged assets of the Atlantic Company, it must
be regarded as auxiliary, and the same finality attaches to the
decree of the Circuit Court of Appeals, therein.

And this is true although another ground of jurisdiction
might be developed in the course of the proceedings, as it
must appear at the outset that the suit is one of that char-
acter of which the Circuit Court could properly take cogni-
zance at the time its jurisdiction is invoked. *Colorado Central
Mining Co.* v. *Turck,* 150 U. S. 138; *In re Jones,* 164 U. S.
691, 693; *Third St. & Suburban Railway Co.* v. *Lewis, ante,*
456.

Some further observations may be usefully added, although
what has been said necessarily disposes of the motion.

The receiver based his right of recovery on the alleged seiz-
ure by one of the defendant companies of certain rights of
way, and grading done thereon by the Atlantic Company
under two specified contracts, which seizure and appropriation
were alleged to have been fraudulently and forcibly made;
and it was averred that appellee, the Louisville, New Albany
and Chicago Railroad Company, acquired title thereto and
possession thereof through its consolidation with another of
the defendant companies, which had acquired its title and
possession through the foreclosure of a mortgage given by the
company which had made the seizure. The bill nowhere
asserted a right under the Constitution or laws of the United
States, but proceeded on common law rights of action. We
cannot accept the suggestion that the mere order of a Federal

court, sitting in chancery, appointing a receiver on a creditor's bill, not only enables the receiver to invoke Federal jurisdiction, but to do this independently of the ground of jurisdiction of the suit in which the order was entered, and thereby affect the finality of decrees in the Circuit Court of Appeals in proceedings taken by him. The validity of the order of appointment of the receiver in this instance depended on the jurisdiction of the court that entered it, and that jurisdiction, as we have seen, depended exclusively upon the diverse citizenship of the parties to the suits in which the appointment was made.

The order, as such, created no liability against defendants, nor did it tend in any degree to establish the receiver's right to a money decree, nor to any other remedy prayed for in the amended bill. The liability of defendants arose under general law, and was neither created nor arose under the Constitution or laws of the United States.

In *Bausman* v. *Dixon*, 173 U. S. 113, we have ruled that a judgment against a receiver appointed by a Circuit Court of the United States, rendered in due course in a state court, does not *per se* involve the denial of the validity of an authority exercised under the United States, or of a right or immunity specially set up and claimed under a statute of the United States. That was an action to recover damages for injuries sustained by reason of the receiver's negligence in operating a railroad company of the State of Washington, though the receiver was the officer of the Circuit Court, and we said: "It is true that the receiver was an officer of the Circuit Court, but the validity of his authority as such was not drawn in question, and there was no suggestion in the pleadings, or during the trial, or, so far as appears, in the state Supreme Court, that any right the receiver possessed as receiver was contested, although on the merits the employment of plaintiff was denied, and defendant contended that plaintiff had assumed the risk which resulted in the injury, and had also been guilty of contributory negligence. The mere order of the Circuit Court appointing a receiver did not create a Federal question under section 709 of the Revised Statutes, and the receiver did not set up any right derived

from that order, which he asserted was abridged or taken away by the decision of the state court. The liability to Dixon depended on principles of general law applicable to the facts, and not in any way on the terms of the order." That was indeed a writ of error to a state court, but the reasoning is applicable here. Pope was appointed receiver by an interlocutory order of the Circuit Court in the exercise of its general equity powers. He did not occupy the position of a receiver of a corporation created under Federal law as in *Texas and Pacific Railway* v. *Cox*, 145 U. S. 593.; or of a marshal of the United States as in *Feibelman* v. *Packard*, 109 U. S. 421 ; or of a receiver of a national bank as in *Kennedy* v. *Gibson*, 8 Wall. 498. Nor did his cause of action originate or depend on the order of appointment, or assignments made to him by the Atlantic Company pursuant to that order. Nor was any right claimed by him by virtue of his order of appointment or of his deeds of assignment denied or alleged to have been denied. The decrees of the Circuit Court and of the Circuit Court of Appeals dealt solely with the alleged rights of the Atlantic Company as against certain Indiana corporations. It is impossible to hold that these orders of appointment were equivalent to laws of the United States within the meaning of the Constitution.

We agree with counsel for appellee that *Provident Savings Society* v. *Ford*, 114 U. S. 635, 641, is in point in this aspect of the case. There it was ruled that "the fact that a judgment was recovered in a court of the United States does not, in a suit upon that judgment, raise a question under the laws of the United States within the meaning of the act of March 3, 1875." That was a writ of error to the Supreme Court of the State of New York to review a judgment of that court denying a motion for the removal of the cause to the United States Circuit Court. Mr. Justice Bradley delivered the opinion, and, after pointing out that the alleged grounds of removal were insufficient, remarked : "It is suggested, however, that a suit on a judgment recovered in a United States court is necessarily a suit arising under the laws of the United States, as much so as if the plaintiff or defendant were a cor-

poration of the United States; and hence that such a suit is removable under the act of March 3, 1875. It is observable that the removal of the cause was not claimed on any such broad ground as this; but, so far as the character of the case was concerned, only on the ground that the defendant had a defence under Rev. Stat. § 739, specifying what the defence was; and we have already shown that that ground of removal, as stated in the petition, was insufficient. But conceding that the defendant is now entitled to take its position on the broader ground referred to, is it tenable and sufficient for the purpose? What is a judgment, but a security of record showing a debt due from one person to another? It is as much a mere security as a Treasury note, or a bond of the United States. If A brings an action against B, trover or otherwise, for the withholding of such securities, it is not therefore a case arising under the laws of the United States, although the whole value of the securities depends upon the fact of their being the obligations of the United States. So if A have title to land by patent of the United States and brings an action against B for trespass or waste, committed by cutting timber, or by mining and carrying away precious ores, or the like, it is not therefore a case arising under the laws of the United States. It is simply the case of an ordinary right of property sought to be enforced. A suit on a judgment is nothing more, unless some question is raised in the case (as might be raised in any of the cases specified), distinctly involving the laws of the United States — such a question, for example, as was ineffectually attempted to be raised by the defendant in this case. If such a question were raised then it is conceded it would be a case arising under the laws of the United States. . . . Without pursuing the subject further, we conclude with expressing our opinion that this last ground of removal, like those already considered, was insufficient."

In *Cooke* v. *Avery*, 147 U. S. 375, jurisdiction was sustained on the ground that the plaintiff's title was derived through the enforcement of a lien, the validity of which depended on the laws of the United States and the rules of the Circuit

Court, and their construction and application were directly involved.

*Appeal dismissed.*

MR. JUSTICE BROWN took no part in the consideration and disposition of this motion.