**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KIM SYMES and CHRISTOPHER
PAUL NORTHCOTT,

     Plaintiffs-Appellants,

v.

STEPHEN R. HARRIS, MAGDALEN J.
HARRIS, and ROTALOC INT'L, LLC, a
Colorado limited liability company.

     Defendants-Appellees.

No. 06-1014

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 03-cv-2272-RPM-BNB)**

---

Benjamin D. Pergament (Keith P. Ray, Lathrop & Gage, LC, and Marc D. Flink, with
him on the briefs), Baker & Hostetler LLP, Denver Colorado, for Plaintiffs-Appellants.

Joseph A. Davies, Joseph A. Davies, P.C., Greenwood Village, Colorado, for Defendants-
Appellees.

---

Before **BRISCOE**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

     Plaintiffs Kim Symes and Christopher Northcott, United Kingdom citizens, filed a

complaint in the United States District Court for the District of Colorado, naming Stephen

Harris, Magdalen Harris, and Rotaloc Int'l LLC (RIL), Colorado citizens, as defendants. The district court dismissed the plaintiffs' action for lack of subject matter jurisdiction and for failure to join a necessary party, Rotaloc (Europe) LTD (REL). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **reverse** the district court's order and **remand** to the district court with directions to exercise jurisdiction over this action and permit joinder of REL.

## I. FACTS

On November 13, 2003, Kim Symes and Christopher Paul Northcott, both United Kingdom citizens, filed this federal action against Stephen R. Harris, Magdalen J. Harris, and RIL, all Colorado citizens. Appellants' Appendix (App.) at 6-7.

The action is based upon a series of negotiations that plaintiffs allege resulted in a binding contract between Mr. Harris and Mr. Northcott to establish a business venture with U.S. and U.K.-based operations. Id. at 7-8. In late 1999, as part of this venture, the Harrises formed RIL as a Colorado limited liability company, the founding documents of which reflect that Mr. and Ms. Harris are each 50% owners of RIL. Id. at 8. Subsequently, Mr. Symes incorporated REL in the United Kingdom. Id. at 8, 23. The businesses were to distribute and sell metal bonding fasteners to businesses in the molding industry. Id. at 8.

In an effort to further develop the venture, Messrs. Symes, Harris, and Northcott allegedly agreed that Mr. Symes would become an investor and part owner of the business venture, splitting the ownership between Mr. Symes, Mr. Northcott, and the

-2-

Harrises.  Id. at 9.  Relying upon this agreement, Mr. Symes allegedly paid a total of $250,000 to RIL, REL, and Messrs. Harris and Northcott.  Id. at 10.  Notwithstanding Mr. Symes' investment, Mr. Harris allegedly believes that Mr. Symes has no ownership interest in the business and that Mr. Northcott has no interest in RIL's revenues or profits.  Id.

Based upon Mr. Harris' refusal to recognize the alleged agreement, plaintiffs' complaint asserts the following causes of action: declaratory relief declaring that until Mr. Symes became an owner, the business venture was a partnership "owned 50/50 by Northcott and the Harrises"; an accounting of RIL's business affairs and assets; declaratory relief declaring Mr. Symes to be a 30% owner of the business; specific performance requiring the Harrises to recognize Mr. Symes and Mr. Northcott's ownership interests in RIL and to pay Mr. Symes and Mr. Northcott their share of RIL's profits; breach of contract; and breach of the fiduciary duty that Mr. Harris owed to Mr. Symes and Mr. Northcott as a partner in their business venture.  Id. at 10-14.

After receiving several motions relating to these claims, the district court issued an order to show cause why the action should not be dismissed for lack of subject matter jurisdiction.  Id. at 142-145.  The Plaintiffs' Response to the Order to Show Cause prayed that the district court discharge the Order to Show Cause and exercise subject matter jurisdiction.  Id. at 152.  The Defendants' Response stated that Defendants did not oppose dismissal for lack of jurisdiction.  Id. at 164.  Following the responses from both parties, the district court held that it lacked jurisdiction because the remedy the plaintiffs sought,

if granted, would render the plaintiffs part owners of RIL, thereby destroying diversity. Id. at 171. Separately, the district court reasoned that REL was a necessary party that could not be joined without destroying diversity jurisdiction. Thus, the court's order separately relied upon Fed. R. Civ. P. 19 as an additional ground for dismissal.

## II. DISCUSSION

The plaintiffs appeal the district court's order based upon two assignments of error: first, the district court erroneously found diversity jurisdiction wanting because of events that might occur after the complaint was filed; and second, the district court erroneously dismissed the action pursuant to Fed. R. Civ. P. 19 even though REL could be joined without destroying diversity.

The appellees have taken two inconsistent positions on this appeal. The appellees' appellate brief takes no position on the legal issues presented and therefore does not address the district court's holdings. See Aplee. Br. at 2, 5. Later at oral argument, however, the appellees asserted that the district court's holdings should be affirmed on the same rationales set forth by the district court.

### A. Diversity Jurisdiction

We review *de novo* a dismissal for lack of subject matter jurisdiction. US West, Inc. v. Tristani, 182 F.3d 1202, 1206 (10th Cir. 1999).

Under 28 U.S.C. § 1332, a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000. See also Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004). The

-4-

question presented to us is whether the district court lacked jurisdiction when the remedy the plaintiffs seek, if granted, would retroactively render them part owners of the defendant RIL and thereby destroy complete diversity. We hold that the district court had jurisdiction.

It has long been the rule that "the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." Mollan v. Torrance, 22 U.S. 537, 539 (1824). In Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004), the Supreme Court explained that "all challenges to subject-matter jurisdiction premised upon diversity of citizenship [are to be measured] against the state of facts that existed at the time of filing . . . ." Put otherwise, "jurisdiction depending on the condition of the parties, is governed by that condition as it was at the commencement of the suit." Id. at 571 (quoting Conolly v. Taylor, 27 U.S. 556, 2 Pet. 556, 565 (1829)). The district court reasoned that the subject matter of the action is a dispute over the composition of RIL's membership – "the very 'condition' that determines RIL's citizenship." App. at 171. Consequently, the court reasoned, accepting the plaintiffs' allegations as true would require a finding that they were members of RIL earlier when the complaint was filed, thereby destroying diversity. Id.

While the broad question is whether the district court's retroactivity rationale squares with the rule that diversity is determined by the facts existing when the complaint was filed, the underlying question concerns the framework through which a district court

-5-

may view the pleadings when determining whether the parties are diverse. In the instant case, the district court circumvented the fact that the plaintiffs were not members of RIL when the suit was filed by erroneously assuming that the allegations in the plaintiffs' complaint were true and subsequently dismissing the action based on a potential remedy available upon final judgment.

Specifically, the district court found that the subject matter of the litigation (whether the plaintiffs are entitled to membership in RIL) was intertwined with the jurisdictional issue (the composition of RIL's membership for determining citizenship). App. at 171 (stating in his order of dismissal that "[t]he subject matter of this action is a dispute over the composition of RIL's membership—the very 'condition' that determines its citizenship"). The district court then assumed the truth of the plaintiffs' well-pleaded facts and concluded that the plaintiffs' allegations would require a remedy rendering them part owners of RIL, thereby destroying diversity. Yet the essence of the time-of-filing rule is that the district court must determine the jurisdictional facts as they are when the complaint is filed, not as they might be upon final judgment. The district court's finding that the subject matter of the litigation is intertwined with a jurisdictional fact does not obviate this basic principle and duty.

The district court's failure to abide by this principle also highlights the district court's error in determining the parties' places of citizenship in light of the remedy that would apply if the plaintiffs' well-pleaded facts were proved at trial. The district court's speculation that a post-filing event could destroy diversity by virtue of the plaintiffs'

retroactive ownership of RIL directly conflicts with the general rule that the court determines the parties' citizenship as of the time when the complaint was filed. The plaintiffs were not members of RIL when the complaint was filed—a fact explicitly alleged in the plaintiffs' complaint. App. at 8 (alleging in paragraph 13 of the complaint that "Magdalen Harris, the wife of Harris, and Harris are both member and managers of RIL and each own a 50% interest in RIL"). The only way plaintiffs *could become* members of RIL is for the plaintiffs to prevail and obtain relief in the district court. We note that the district court framed its citizenship analysis prospectively: "*[i]f* the court *were to grant* the plaintiffs' partnership motion, giving them the relief requested [specific performance] . . . , *then* complete diversity would be lacking." App. at 144 (emphasis added). However, the granting of plaintiffs' requested relief would be a post-filing event that could not oust the district court's jurisdiction.

Moreover, accepting the district court's retroactivity analysis runs counter to the rationale behind other rules relating to § 1332 jurisdiction. For example, it is well settled that a district court does not lack § 1332 jurisdiction if a plaintiff ultimately recovers less than the required jurisdictional amount, if the district court dismisses part of the plaintiff's claim on a motion for summary judgment (thereby reducing the plaintiff's remaining claim below the requisite jurisdictional amount), or if the plaintiff's complaint reveals that a perfect defense might be interposed to reduce the alleged amount in controversy below the jurisdictional amount. Anderson-Thompson, Inc. v. Logan Grain Co., 238 F.2d 598, 601 (10th Cir. 1956) (stating that "[i]n the absence of bad faith or collusion . . .

-7-

jurisdiction attaches at the moment of the filing of the complaint and the existence of a good defense or a voluntary or involuntary reduction of the amount claimed, or a change in the cause of action, will not defeat jurisdiction previously acquired"); 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3702.

Instead, all of these events are governed by the time-of-filing rule, under which the inquiry is whether the plaintiff alleged satisfaction of the amount in controversy requirement or enough information from which it may be inferred that the jurisdictional amount was satisfied when the action was instituted. Anderson-Thompson, Inc., 238 F.2d at 601-02; Wright, Miller & Cooper, supra, § 3702. The district court's analysis calls these rules into question, rules we are not permitted to undo, by adopting a rule that a court may retroactively apply the impact of a potential final judgment to alter the state of actual facts (concerning the diversity of citizenship) in existence when the complaint was filed.

The plaintiffs were not members of RIL when the complaint was filed. Indeed, they are not members now. We must disagree with the district judge's analysis, which he applied to conscientiously determine whether jurisdiction was proper. We are convinced that the predominant rule is that the status of affairs at the commencement of the suit is controlling. Accordingly, the complaint reflects the complete diversity required by § 1332, and the district court's ruling to the contrary was in error.

## B. Fed. R. Civ. P. 19

A district court's determination under Fed. R. Civ. P. 19(a) or 19(b) is reviewed

for abuse of discretion, while any legal conclusions underlying a Rule 19 determination are reviewed *de novo*.  Sac & Fox Nation of Mo. v. Norton, 240 F.3d 1250, 1258 (10th Cir. 2001).  In reviewing this determination for abuse of discretion, "we must consider 'whether the decision maker failed to consider a relevant factor, whether he [or she] relied on an improper factor, and whether the reasons given reasonably support the conclusion.'"  Rishell v. Jane Phillips Episcopal Memorial Medical Center, 94 F.3d 1407, 1411 (10th Cir. 1996) (alteration in original).  Moreover, the "standards set out in Rule 19 for assessing whether an absent party is indispensable are to be applied 'in a practical and pragmatic but equitable manner.'"  Id.  The issue of indispensability, generally, is not waivable, and is one which courts have an independent duty to raise *sua sponte*.  Mescalero Apache Tribe v. New Mexico, 131 F.3d 1379, 1383 (10th Cir. 1997) (citation omitted).

In pertinent part, Fed. R. Civ. P. 19(a) provides that a person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined if the "person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Fed. R. Civ. P. 19(b) provides that "[i]f a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed,

-9-

the absent person being thus regarded as indispensable . . . ."

Here the district court first considered Fed. R. Civ. P. 19(a) and held that REL was a necessary party. The court then held that Fed. R. Civ. P. 19(b) required dismissal because REL could not be joined without destroying diversity, and in equity and good conscience the action should not proceed. These holdings present two questions: first, whether the district court erred by holding that REL was a necessary party; and second, whether the district court erred by holding that REL could not be made a party without destroying diversity, so in equity and good conscience the action should not proceed.

## 1. Fed. R. Civ. P. 19(a)

The district court grounded its necessary-party determination on two separate findings. The court first held that REL, a United Kingdom citizen, was necessary because Symes and Northcott's claims were premised, in substantial part, on REL's rights against the Harrises and RIL. The court separately found that "because of the nature of the plaintiffs' claims, any adjudication in the absence of REL would subject the defendants to the risk of another lawsuit by REL."

Although Mr. Symes and Mr. Northcott seek to enforce their rights via this lawsuit, they allege that the Harrises harmed REL and concede that REL has substantially similar claims arising against the Harrises. The plaintiffs even joined REL as a plaintiff in their parallel state litigation. It is therefore reasonable to assume that REL might subject the Harrises to a direct or derivative suit during or following the instant action. Thus, the district court did not abuse its discretion in finding that REL's absence from this

litigation may leave the Harrises subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of REL's claimed interest—the precise harm Fed. R. Civ. P. 19(a) was partially designed to avoid.

## 2. Fed. R. Civ. P. 19(b)

One analytical step remains, however, since Fed. R. Civ. P. 19(b) forbids dismissal if the necessary party could be made a party. The district court held that REL could not be made a party because joining REL as a defendant would destroy diversity. The plaintiffs rejoin that they are REL's sole owners and would voluntarily join REL as a plaintiff. We hold that REL could have been joined as a plaintiff in either a derivative or direct suit, thereby preserving diversity.

Corporations are generally aligned as nominal defendants in derivative suits. When determining whether diversity jurisdiction exists, however, courts are not bound by this practice or by the party alignment set forth in the pleadings. Rather, the Supreme Court has stated that a court should look beyond these formalities and attempt to determine the parties' actual interests. See City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69-70 (1941). Only when the parties are aligned to match their actual interests can the court determine whether § 1332 is satisfied. Id. The most prominent reason for not aligning a corporation as a plaintiff in a derivative suit is that the corporation is adverse to the plaintiff's derivative suit. See Doctor v. Harrington, 196 U.S. 579, 587 (1905).

This case presents the ideal set of facts for aligning REL as a plaintiff. REL is

-11-

owned entirely by the plaintiffs. There is no one within the company that would oppose bringing the suit, and REL's legal position would be aligned against the defendants' interests. Moreover, unlike in many derivative lawsuits, the defendants are not officers or directors within the company being joined. The defendants, outsiders to REL, allegedly caused harm to REL and therefore have opposite financial and legal interests in this litigation. Thus, the nature of the controversy would permit styling REL as a plaintiff.

Regardless, it is unclear why the district court assumed that the plaintiffs could only sue derivatively on REL's behalf. By definition, a derivative suit is predicated upon the assumption that the corporation has refused to sue directly. Since the plaintiffs are REL's sole owners, and since the plaintiffs do not oppose joining REL as a plaintiff, REL could sue the defendants directly. Thus, REL could be joined as a plaintiff without destroying diversity.

A court may dismiss a lawsuit under Fed. R. Civ. P. 19(b) only if the necessary party "cannot be made a party." REL, a necessary party under Rule 19(a), may be joined as a plaintiff either in a direct or derivative suit, which will preserve jurisdiction under § 1332. Accordingly, the district court's dismissal under Rule 19(b) was in error.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order and **REMAND** with directions to exercise jurisdiction over this action and to permit REL's joinder as a plaintiff.