**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MERRILL SCOTT & ASSOCIATES,
LTD; PHOENIX OVERSEAS
ADVISERS; GIBRALTAR
PERMANENTE ASSURANCE, and
each of their respective subsidiaries
and affiliated entities,

　　　　Plaintiffs-Appellees,

DAVID K. BROADBENT, as Receiver
for Merrill Scott & Associates, Ltd.,
and each of their respective
subsidiaries and affiliated entities,

　　　　Plaintiff-Counter-
　　　　Defendant-Third-Party-
　　　　Defendant-Appellee,

　　v.

CONCILIUM INSURANCE
SERVICES; CONCILIUM REAL
ESTATE AND MORTGAGE
SERVICES; CONCILIUM
PLANNING GROUP; CONCILIUM
MERCHANT CAPITAL GROUP,
Utah corporations; ROD B. READ;
DREW ROBERTS,

　　　　Defendants,

CGI INTERNATIONAL HOLDINGS,
a Delaware corporation,

　　　　Defendant-Counter-
　　　　Claimant,

No. 07-4078
(D.C. No. 2:02-CV-230-TC)
(D. Utah)

v.

ROBERT J. HIPPLE,

      Defendant-Appellant,

  and

ESTATE PLANNING INSTITUTE; HOLLAND & HART, a Colorado limited liability company; REHA DEAL; JAMES L. BARNETT; GIL A. MILLER; PRICEWATERHOUSE COOPERS LLP,

      Third-Party-Defendants,

INTERNATIONAL PLANNING ASSOCIATES,

      Third-Party-Defendant-Counter-Claimant-Third-Party-Plaintiff.

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff-appellee David K. Broadbent ("Receiver") in his capacity as Receiver for Merrill Scott & Associates, Ltd. ("Merrill Scott") was awarded summary judgment against defendant-appellant Robert J. Hipple after the district court determined that Mr. Hipple breached his fiduciary duties as an officer and director of Merrill Scott. Mr. Hipple appeals, contending among other things that the complaint should have been dismissed pursuant to Federal Rule of Civil Procedure 19(b) for failure to join an indispensable party.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, vacate in part, and remand for further proceedings. We affirm the district court's denial of Mr. Hipple's motion to dismiss for lack of jurisdiction, because the court unquestionably had jurisdiction over the action in which the Receiver was appointed, and this action was clearly filed in furtherance of the Receiver's goals. We also affirm the district court's decision to strike Mr. Hipple's motion for summary judgment as untimely. We must vacate, however, its award of summary judgment to the Receiver because we conclude that decision was based on an incomplete analysis in that the district court failed to consider whether Estate Planning Institute was an indispensable party under Rule 19. We therefore remand this action for consideration of that issue, as discussed in detail below.

## I. Background Facts

*A. Merrill Scott and Estate Planning Institute*

From August 15, 2001, to October 15, 2001, Mr. Hipple served on Merrill Scott's board of directors and as its President and Chief Executive Officer. At the time, Merrill Scott was on the brink of insolvency. Although it marketed itself as a global financial services provider for wealthy individuals, the Securities and Exchange Commission later charged that Merrill Scott was actually part of an elaborate ponzi scheme orchestrated by its founder and owner, Patrick M. Brody. One aspect of Merrill Scott's business was legitimate and profitable, however. It encompassed a group of individuals who provided fee-based tax and financial planning services through a related entity called Estate Planning Institute ("EPI").

The district court described EPI as a captive law firm of Merrill Scott, a characterization with which Mr. Hipple disagrees. Although he admitted at his deposition that when he arrived at Merrill Scott, there was virtually no financial separation between it and EPI, he went on to testify that one of his first tasks as managing director was to separate and formalize the relationship between the two entities. Under his direction, in September 2001, EPI and Merrill Scott entered into an agreement under which Merrill Scott agreed to provide marketing and administrative services to EPI, which in turn agreed to provide the actual financial planning services to clients. Under this new arrangement all clients that

-4-

were formerly considered clients of Merrill Scott became clients of, and signed retainer and other agreements with, EPI.

B. *The Asset Acquisition Agreement*

As Mr. Hipple came to better understand Merrill Scott's dire financial condition, he realized that EPI was its only valuable asset. Referring to EPI, he testified at his deposition that "Merrill Scott itself really had essentially no value other than a collection of fairly talented employees, attorneys, accountants and some others." Supp. R. vol. XI, doc. 123, ex. 1 at 146. He therefore recommended to Mr. Brody that they "try to save that group of employees and that talent and see if something could be made of the financial planning and tax business by forming a new company with those employees." *Id.*; *see id.* at 175 ("[W]e were trying to salvage the business out of a bankrupt corporation."). Mr. Brody agreed with this plan, and on October 12, 2001, Mr. Hipple incorporated International Planning Associates, Inc. ("IPA"), naming himself as Chairman, CEO, and sole shareholder. According to Mr. Hipple's own testimony, IPA was formed for the singular purpose of acquiring Merrill Scott's tax and financial planning business embodied in EPI. Through mid-October, Mr. Hipple worked with Mr. Brody and others to draft the Asset Acquisition Agreement ("Agreement"), governing the sale of Merrill Scott's tax and financial planning

business.[1]  He admits that while he was still a director of Merrill Scott he negotiated the terms of the agreement on behalf of IPA.

The Agreement is dated October 15, 2001.  Mr. Hipple testified that on that day, he met with Rodney Read and Dell Gailey, Merrill Scott's two other board members, to discuss the Agreement and the fact that he would resign as a director because "[he] was on the other side of the transaction as well." *Id.* vol. XII, doc. 159, ex. B at 221.  He went on to testify that "the board then approved the agreement as drafted and authorized it to be signed after [he] resigned." *Id.* Mr. Read signed the agreement on behalf of Merrill Scott, and Mr. Hipple signed on behalf of IPA.  At the same time, Mr. Hipple resigned from Merrill Scott's board.  With respect to the specific timing of his resignation and the execution of the Agreement, he testified:

> We did it all at one time.  You know, okay, I'm resigning, you're approving.  I mean, it wasn't like we had a formal meeting with a stenographer or anything.  It was just, this has to be done and documented in the corporate records.  So it was documented.

*Id.* at 221-22.

The Agreement contemplated essentially two separate transactions.  First, IPA agreed to assume approximately $106,000 of Merrill Scott debt in exchange

---

[1]      The record submitted on appeal does not include a signed copy of the Agreement.  There are several unsigned copies of the Agreement, however, including one attached to the report submitted by the Receiver's forensic accounting expert Gil A. Miller.  And both the Receiver and Mr. Hipple agree that it was executed on October 15, 2001.  Having no reason to doubt this representation, we accept it.

for all of the business conducted by EPI. This included "all future income, work in process, material agreements, employment agreements and confidentiality and non-disclosure agreements, strategic plans and relationships." *Id.* vol. XIII, doc. 166, ex. A (Amended Expert Report of Gil A. Miller), tab 10 (Agreement) at 1. Second, in exchange for 15,000 shares of IPA common stock, Merrill Scott agreed to sell certain computer hardware, furniture, and telephone assets listed on an attached schedule.

According to the Receiver's expert report, although IPA succeeded to Merrill Scott's relationship with EPI as contemplated in the Agreement, the actual amount of debt assumed and paid by IPA amounted to only $14,816. *See* Miller Report at 7. Merrill Scott also paid certain debts on behalf of IPA, which were never repaid, and thus Mr. Miller concluded that the actual consideration received by Merrill Scott in exchange for its tax and financial planning business was a negative $151,704. According to Mr. Miller, in exchange for this amount, IPA received approximately $2.35 million in client fees and commissions generated by EPI after the Agreement was executed. He also concluded that the vast majority of the clients who paid those fees were contacted by Merrill Scott before October 15, 2001. Finally, he noted that there was no evidence of 15,000 shares of IPA stock ever being issued to Merrill Scott. Mr. Hipple disputes virtually all of these findings. He does not dispute, however, that after October 15, 2001, he worked exclusively for IPA. At his deposition, he admitted to establishing bank accounts

for IPA and EPI, securing office space for IPA, and taking other action in furtherance of his plan to completely separate the company from Merrill Scott.

## II. Procedural History

On January 15, 2002, the SEC filed a civil complaint against Mr. Brody and several Merrill Scott entities. On January 23, the district court in that action entered a stipulated order appointing David K. Broadbent as Receiver for the Merrill Scott defendants. The order directed the Receiver to "take control of Merrill Scott funds, assets, and property wherever situated, with the powers set forth [therein]." R. vol. X, doc. 164 (order granting summary judgment) at 7 (quotation omitted). In furtherance of this purpose, the order empowered the Receiver "to investigate, prosecute, defend, intervene in or otherwise participate in . . . any state, federal or foreign court proceeding of any kind as may in his sole discretion be advisable or proper to recover or conserve funds, assets and property of Merrill Scott." *Id.* at 8 (quotation and emphasis omitted).

Pursuant to this authority, the Receiver filed this lawsuit against Mr. Hipple on March 21, 2002, asserting among others, claims for breach of fiduciary duty, conversion, and fraudulent conveyance.[2] On April 22, Mr. Hipple filed a motion

---

2 The Receiver named numerous other individuals and entities involved in the transfer of Merrill Scott's assets to IPA, including CGI International Holdings, Inc., another of Mr. Hipple's companies, which the Receiver alleged was the ultimate beneficiary of the asset transfer. Since Mr. Hipple stands alone in this appeal, however, we mention only the claims against him and only those as to which he asserts error.

to dismiss under Rule 19(b), arguing that the lawsuit could not proceed without IPA and EPI, which he claimed were indispensable parties. At the time, both EPI and IPA were in Chapter 11 bankruptcy proceedings. On August 19, the district court denied the motion without prejudice based on the parties' representation that IPA had emerged from bankruptcy and would be added to an amended complaint. Although EPI remained under bankruptcy protection, the district court did not address Mr. Hipple's argument concerning its status as an indispensable party. On October 28, the Receiver filed his First Amended Complaint, adding IPA as a defendant. Mr. Hipple filed a second motion to dismiss on December 19, 2003, challenging the district court's subject matter jurisdiction. Curiously, given that EPI was still not a party to the lawsuit, he did not reassert his arguments under Rule 19.

On January 22, 2004, the Receiver moved for partial summary judgment on his claims against Mr. Hipple. Mr. Hipple cross-moved for summary judgment four months later, on May 25. On August 20, the district court issued an order granting the Receiver's motion for summary judgment and denying Mr. Hipple's motion to dismiss on the merits, and striking Mr. Hipple's cross-motion as untimely. The court rejected Mr. Hipple's challenge to its jurisdiction, drawing on well-settled law establishing the jurisdiction of federal courts over ancillary proceedings brought by a receiver in a related action.

> It is well established that a federal district court has subject matter jurisdiction in ancillary actions brought in the court where the receiver is appointed to accomplish the ends sought and directed by the suit in which the appointment was made.

*Id.* at 9 (quotations omitted). The court concluded that this action was both ancillary to the SEC action in which the Receiver was appointed and consistent with his authority to recover and conserve the assets of Merrill Scott. It went on to find, based primarily on Mr. Hipple's deposition testimony and the Receiver's expert report, that "Mr. Hipple . . . breached [his] fiduciary duties to Merrill Scott by executing a fraudulent transfer of substantially all of Merrill Scott's assets to IPA for less than reasonably equivalent value." *Id.* at 22. The court therefore granted summary judgment on the Receiver's breach of fiduciary duty and fraudulent conveyance claims and declined to reach the issue of whether Mr. Hipple could also be found liable for conversion. In a subsequent order, dated June 2, 2005, the court determined that Mr. Hipple was personally liable to Merrill Scott for damages in the amount of $3,502,337. This appeal followed.

### III. Discussion

Mr. Hipple raises numerous issues on appeal, which we condense here for ease of discussion. First, he contends that the district court erred in failing to dismiss the action pursuant to his first motion, raising the indispensable party issue, and his second motion, challenging the court's subject matter jurisdiction. Second, he challenges nearly all of the district court's findings underlying its

award of summary judgment to the Receiver on the fraudulent transfer and breach of fiduciary duty claims. And finally, he claims the district court abused its discretion in striking his cross-motion for summary judgment.

*A. Subject Matter Jurisdiction*

Our proper starting point is determining whether the district court correctly decided it had jurisdiction, an issue that we review de novo. *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004). The claims against Mr. Hipple neither arise under federal law nor involve diverse parties. The district court's exercise of jurisdiction over the Receiver's claims rested on its determination that the claims were ancillary to those asserted in the SEC action already pending before it. Mr. Hipple argues that the supplemental jurisdiction statute is inapplicable because the Receiver's claims against him are not "so related" to the SEC's claims that they "form part of the same case or controversy" within the meaning of the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). The district court rightly rejected this argument. The Supreme Court recognized over 100 years ago that a federal receiver may sue in the court of his appointment "to accomplish the ends sought and directed by the suit in which the appointment was made," and that "such action or suit is regarded as ancillary" to the court's original subject matter jurisdiction. *Pope v. Louisville, N.A. & C. Ry.*, 173 U.S. 573, 577 (1899); *see Oils, Inc. v. Blankenship*, 145 F.2d 354, 356 (10th Cir. 1944) ("A federal court, which has appointed a receiver in a proceeding of which it has

-11-

jurisdiction, has jurisdiction to entertain a suit or proceeding to collect or recover assets."); *Tcherepnin v. Franz*, 485 F.2d 1251, 1255-56 (7th Cir. 1973) (same quoting *Pope*).

Here, the district court appointed the Receiver to marshal and preserve the assets of Merrill Scott for the benefit of Merrill Scott's creditors, and this action against Mr. Hipple is consistent with these goals. Even though, as Mr. Hipple argues, the cases on which the district court relied predate the supplemental jurisdiction statute, he has raised no argument to persuade this court that it need not follow the principal announced in *Pope*, nor has he cited any authority contrary to *Pope*. Therefore, we conclude the court properly relied upon its ancillary jurisdiction and did not need an independent basis upon which to exercise subject matter jurisdiction over the Receiver's claims. *See Tcherepnin*, 485 F.2d at 1256. Mr. Hipple's motion to dismiss for lack of jurisdiction was properly denied.

*B. Indispensable Party Issue*

In his initial motion to dismiss and on appeal, Mr. Hipple contends that EPI was a necessary party to this action, and that the district court should have dismissed this action pursuant to Rule 19(b) if joinder of EPI was not feasible. Rule 19 requires the district court to "first determine whether the absent party is necessary to the lawsuit and, if so, whether joinder of the absent party is feasible." *Davis v. United States*, 192 F.3d 951, 957 (10th Cir. 1999). If joinder

-12-

is not feasible, the court must then decide "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." *Id.* at 959. The factors to be weighed by the district court in making this decision are enumerated in Rule 19(b).

Generally, we review a district court's determination under Rule 19 for an abuse of discretion; although, underlying legal conclusions are reviewed de novo. *See id.* at 957. In this case, however, there are no legal or factual conclusions for us to review. The district court denied Mr. Hipple's Rule 19 motion summarily and without prejudice based on the Receiver's representation that he intended to add *IPA* as a defendant in an amended complaint. After the amended complaint was filed, no one appears to have raised the issue of whether the lawsuit could proceed without EPI. Therefore, the district court never addressed the merits of Mr. Hipple's argument that EPI is both necessary and indispensable, which are questions that we have held should be decided by the district court in the first instance. *See Davis*, 192 F.3d at 961 (declining to perform the fact-finding function reserved for the district court to reach issue of indispensability under Rule 19).[3]

---

[3]    While Mr. Hipple's neglect in failing to raise this issue in his second motion to dismiss might be blamed for the lack of a reviewable decision as to EPI's status under Rule 19, we cannot conclude that the issue has been waived. *See, e.g., Symes v. Harris*, 472 F.3d 754, 760 (10th Cir. 2006) ("The issue of indispensability, generally, is not waivable, and is one which courts have an independent duty to raise *sua sponte*.").

Mr. Hipple has argued, and testified at his deposition, that after he arrived at Merrill Scott, EPI became a completely separate entity, which Merrill Scott and then IPA serviced pursuant to certain contracts. He further testified that clients had a direct relationship with EPI and made payments directly to EPI, which then compensated IPA for its services. The Receiver disputes that EPI was independent of Merrill Scott, but nonetheless contends that Mr. Hipple converted EPI's earnings for the benefit of IPA and ultimately CGI. Either way it is clear that funds earned by EPI were ultimately transferred out of EPI and that EPI was eventually forced into bankruptcy. This alone is enough to convince us of the possibility that EPI may "claim[] an interest relating to the subject of [this] action." Fed. R. Civ. P. 19(a). Whether it does, whether its interest is protected, and whether its absence leaves any of the defendants at risk of double or inconsistent obligations are fact questions that the district court is obligated to examine in the first instance. *See Davis*, 192 F.3d at 961. We decline to undertake such a fact-intensive inquiry. Accordingly, we remand to the district court to conduct an analysis of all the factors articulated in Rule 19 and to make a reviewable determination as to whether EPI is an indispensable party in this action. On remand, it shall be Mr. Hipple's burden to establish that EPI has an interest relating to the Receiver's claims. *See id.* at 958.

*C. The Receiver's Motion for Summary Judgment*

Mr. Hipple also challenges the district court's grant of summary judgment to the Receiver, arguing primarily that EPI's post-October 15, 2001, earnings either derived from sources independent of Merrill Scott or were subsequently returned to Merrill Scott. We express no opinion as to the factual or legal correctness of the district court's merits determination. We conclude, however, that its award of summary judgment was premature given the outstanding indispensable party issue. Rule 19 requires the district court to make a preliminary determination as to the necessity of EPI's presence in the action, the feasibility of joinder, and ultimately, whether the action can proceed in equity and good conscience with the parties present if EPI cannot be joined. *See Symes v. Harris*, 472 F.3d 754, 760 (10th Cir. 2006). EPI was apparently the sole source of income for both Merrill Scott and IPA. And while the district court referred to it as a Merrill Scott entity and "captive law firm," R. vol. X, doc. 164 at 3-4, it never explained the meaning of these characterizations or made any specific fact findings concerning the extent of EPI's independence, if any, from Merrill Scott, particularly after Mr. Hipple became a managing director. This analysis, which is necessary to resolve the indispensable party issue, will likely affect the court's merits analysis as well. We therefore vacate the district court's order granting summary judgment to the Receiver and remand for reconsideration in light of its findings on the issue of EPI's status as an indispensable party.

*D. Mr. Hipple's Cross-Motion For Summary Judgment*

Finally, Mr. Hipple claims that the district court abused its discretion in striking his motion for summary judgment as untimely. We reject his challenge because the motion was clearly late. On December 17, 2003, the district court entered an order setting December 22 as the dispositive motion cut-off date. The parties later consented to extending the deadline by an additional thirty days, to January 22, 2004, and the Receiver filed his motion for summary judgment on that date.[4] On January 20, Mr. Hipple filed another motion, over the Receiver's objection, requesting a further extension to February 16. He did not file his motion for summary judgment, however, until May 27, a full three months past the last extension that he requested.

We review district court decisions pertaining to docket management and supervision of the pretrial phase of litigation for abuse of discretion. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). The court's decision to strike Mr. Hipple's summary judgment motion falls within this framework. *See Arakaki v. Lingle*, 477 F.3d 1048, 1069 (9th Cir. 2007) (holding district court did not abuse its discretion in striking counter motion for summary judgment). Under this standard, "a trial court's decision will not be disturbed

---

[4] We reject Mr. Hipple's contention that the Receiver's motion was also late because it was filed after January 16, 2004. This argument is nothing less than spurious given that Mr. Hipple specifically requested that the deadline be further extended to January 22, and the Receiver filed a "Notice of Nonopposition" to this date. R. vol. VII, doc. 115.

unless we have a definite and firm conviction that the lower court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Beaird*, 145 F.3d at 1164 (quotation and alteration omitted). Mr. Hipple has not demonstrated that the district court's decision to strike his motion for summary judgment constituted an abuse of discretion. Its decision on this score is therefore affirmed.

## IV. Conclusion

We AFFIRM the district court's denial of Mr. Hipple's motion to dismiss for lack of jurisdiction. With respect to the portion of its August 20, 2004, order granting summary judgment to the Receiver, we VACATE and REMAND for reconsideration in light of the views expressed in this order and judgment. On remand, the district court is to analyze the factors set forth in Fed. R. Civ. P. 19 as applicable to Mr. Hipple's argument that EPI is an indispensable party to this action. We AFFIRM the district court's order striking Mr. Hipple's motion for summary judgment.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge

-17-